**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ARYA RISK MANAGEMENT SYSTEMS, § | | |
| PVT. LTD. and WINCAB RISK § | | |
| SOLUTION, LLC, § | | |
| § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | CASE NO. 4:16-cv-03595 | |
| § | | |
| DUFOSSAT CAPITAL PUERTO RICO, § | | |
| LLC, DUFOSSAT CAPITAL, LP, § | | |
| DUFOSSAT CAPITAL I, LLC, § | | |
| DUFOSSAT CAPITAL GP, LLC, § | | |
| and ASHTON SONIAT, § | | |
| § | | |
| Defendants § | JURY TRIAL DEMANDED | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

Plaintiffs Arya Risk Management Systems, Pvt. Ltd. and Wincab Risk Solution, LLC file

the instant Second Amended Complaint against Defendants Dufossat Capital Puerto Rico, LLC,

Dufossat Capital, LP, Dufossat Capital I, LLC, Dufossat Capital GP, LLC and Ashton Soniat,

and respectfully show as follows:

## PARTIES

1.     Plaintiff Arya Risk Management Systems, Pvt. Ltd. is an Indian company

registered under the Indian Companies Act and is located in Pune, India.

2.     Plaintiff Wincab Risk Solution, LLC ("Wincab") is a New York limited liability

company with its principal place of business in East Quogue, New York.  Wincab acts as an

agent for Arya in the United States.  All acts or omissions of Wincab were as agent for and on

behalf of Arya.  Wincab and Arya will be referred to collectively as "Arya."

3.      Defendant Dufossat Capital Puerto Rico, LLC is a Delaware Limited Liability Company headquartered in Puerto Rico, but with offices in Houston, Texas.  Dufossat engages in business in Texas and this proceeding arises out of business done by Dufossat in Texas.  This Defendant has appeared and answered herein.

4.      Defendant Dufossat Capital, LP is a Delaware Limited Partnership with offices in Texas.  This entity engages in business in Texas and this proceeding arises out of business done by this entity in Texas.  This entity may be served by serving tis registered agent for service of process, Dufossat Capital GP, LLC at 20 Greenway Plaza, Suite 100, Houston, Texas 77046.

5.      Defendant Dufossat Capital I, LLC is a Delaware Limited Liability Company with offices in Texas.  This entity engages in business in Texas and this proceeding arises out of business done by this entity in Texas.  This entity may be served by serving tis registered agent for service of process, Steve Wang, at 20 Greenway Plaza, Suite 100, Houston, Texas 77046.

6.      Defendant Dufossat Capital GP, LLC is a Delaware Limited Liability Company with offices in Texas.  This entity engages in business in Texas and this proceeding arises out of business done by this entity in Texas.  This entity may be served by serving tis registered agent for service of process, Ashton Soniat, at 20 Greenway Plaza, Suite 100, Houston, Texas 77046.

7.      Defendant Ashton Soniat ("Soniat") is an individual resident of Puerto Rico, and may be served at 8 Dorado Beach, East Dorado, Puerto Rico 00646.  This defendant has appeared and answered herein.

## JURISDICTION AND VENUE

8.      This Court has personal jurisdiction over Defendants because Defendants conducted business in the State of Texas and the causes of action asserted herein arose from and

are connected to purposeful acts taken by Defendants in Texas.  Defendants' contacts with Texas were continuous and systematic.

9.     This is a claim for copyright infringement arising under the Copyright Act of 1976, 17 U.S.C.  §§ 101, *et. seq.*  This Court has subject matter jurisdiction over this claim pursuant to 28 U.S.C. §1331 and 1338.  This Court has pendent, ancillary and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Venue is proper in this Court because the causes of action asserted herein arose in Harris County, Texas.

10.     All conditions precedent to Plaintiffs' right to recover the relief sought herein have occurred or have been performed.

## FACTS COMMON TO ALL COUNTS

11.     Defendant Dufossat Capital Puerto Rico, LLC, Defendant Dufossat Capital, LP, Defendant Dufossat Capital I, LLC and Defendant Dufossat Capital GP, LLC (collectively referred to as "Dufossat") are companies engaged generally in commodities, oil, gas, transmission rights, futures, options, swaps, and electricity trading. Ashton Soniat is Dufossat's CEO.

12.     Prior to the inception of Dufossat, Soniat operated a similar business that broke up because of fights over money, prompting Soniat to form Dufossat in August 2013.  Because Arya had performed services for Soniat's previous company, Dufossat similarly contracted with Arya to provide computer programming, domain, email, and support services ("IT Services").

13.     Among its business operations, Dufossat trades in the transmission and movement of wholesale electricity.  For example, PJM Interconnection is a regional electricity transmission organization that operates a wholesale electricity market for the transmission of electricity in the

Eastern United States.  Among other things, Dufossat trades a financial product called Up To Congestion ("UTC") on the PJM Market.

14.     UTC trading activity requires the analysis of large quantities of market information, including thousands of energy transmission routes or paths to determine potentially profitable paths for trading.  In order to operate its business, Dufossat needed to utilize computer programs that use quantitative analysis to filter, analyze, evaluate and make potential energy trades.  Arya and its programmers developed such a computer program, known as the "Trading Program" or "Trader App" (referred to herein as the "Trading Program").  Arya obtained a copyright on the Trading Program in February 2014 bearing Registration No. TXu 1-957-517.

15.     Arya's development of the Trading Program was not a "work for hire."  There was no written agreement signed by the parties relating to the development of the Trading Program.  And the individuals who developed the Trading Program were employees of Arya, not employees of Dufossat. Arya was an independent contractor that provided services to Dufossat.

16      In November 2015, Dufossat proposed to Arya a written agreement that purported to classify Arya's development of the Trading Program as a "work for hire."   The draft agreement conceded that Arya had been hired to "develop" the Trading Program.  Dufossat's attorney, Kyle Carlton, referred to the proposed agreement as the "software development and trading contract" in an email dated December 3, 2015.

17.     Arya did not sign the proposed agreement.  Instead, Arya's attorneys drafted a simple services agreement that clarified that the Trading Program belonged to Arya and not Dufossat.  Ultimately, the parties were unable to agree to the terms of a written agreement, and none was signed.

18.     In or around June 2014, Arya approached Dufossat and offered to provide trading analysts called "Quants" who could be trained by Arya to use the Trading Program to provide Dufossat with recommended UTC trades.  Thus, Dufossat entered into an agreement with Arya, whereby Arya agreed to provide recommended UTC trades formulated through quantitative analysis of market information ("Quant Services") in exchange for 30% of all profits made by Dufossat on Arya's trade recommendations.  This was separate and apart from the IT Services Dufossat had previously hired Arya to perform.

19.     Between June 2014 and August 2014, the Arya Quants were trained by Arya to make trade recommendations using the Trading Program and their quantitative analysis.  During this time, the Arya Quants practiced with hypothetical UTC trades until they were proficient at making profitable UTC trade recommendations.  They began submitting recommended trades to Dufossat in or around the end of August 2014.

20.     The Arya Quants would not actually make UTC trades.  Instead, the Arya Quants would provide Defendants with UTC trade recommendations by uploading recommended trades onto Dufossat's computer system, and Defendants would then make the actual UTC trades recommended by the Arya Quants.  The trades recommended by the Arya Quants were made on a separate account (the "Arya Book").

21.     Unbeknownst to Plaintiffs, in addition to the UTC trades made in the Arya Book based on the Arya Quants' recommendations, numerous "shadow trades" were made by Defendants outside of the Arya Book.  Defendants developed and maintained a secret program to "shadow" (duplicate or follow) the trades recommended by the Arya Quants.  These trades were larger than the trades made in the Arya Book and were kept separate from the Arya Book.

22.    Beginning in August 2014, Defendants began making the shadow trades. Thereafter, millions of dollars in profits began flowing into a secret trading account (the "Shadow Book").  The shadow trades were concealed from Plaintiffs.  Plaintiffs were not paid the agreed-upon percentage of the profits Defendants derived from these trades.  Evidently, the Shadow Book was in the name of Soniat.

23.    In 2015, Defendants stopped paying for the Quant Services.  Furthermore, in late 2015 and early 2016, Defendants refused to pay amounts owed related to the IT Services as well.  Despite Soniat's repeated promises and assurances of payment, Defendants have still not paid the amounts owed for such services.

24.    Eventually, Arya learned that Defendants had not only been using the Arya Quants' recommendations to make UTC trades in the Arya Book, but that Defendants had also been secretly cutting Arya out of its 30% share of profits by using the Arya Quants' recommendations to make additional UTC trades in greater quantities in the Shadow Book without paying Arya its 30% share of such trades.  Accordingly, in July 2015, Arya confronted Soniat about the trades made in the Shadow Book.  Thereafter, the parties attempted to negotiate the terms of a comprehensive, written agreement that would govern their relationship going forward.  They were unable to do so.

25.    Without warning, on February 9, 2016, Defendants shut Arya out of Dufossat's computer systems, making it impossible for Arya to provide services to Dufossat and effectively ending the relationship between Arya and Dufossat.  Upon information and belief, Defendants have continued to use the Trading Program, both directly and indirectly, to make energy trades since the termination of the Arya-Dufossat relationship in February 2016.  Such continued use

was and is wrongful and constitutes infringement of Arya's copyright that has caused Arya actual damages.

26.     Arya recently learned that Defendants have hired the former Arya Quants to provide the same services they had provided to Defendants when they were employed by Arya. Defendants have made financial payments to the former Arya Quants and have purchased computer hardware for their use.   Upon information and belief, the former Arya Quants have used the Trading Program to make energy trades on Dufossat's behalf and/or energy trade recommendations to Dufossat since the termination of the Arya-Dufossat relationship in February 2016 in violation of their non-compete and non-disclosure agreements with Arya.

27.     The Arya Quants are parties to Employment Agreements and Non-Disclosure Agreements.  The agreements contain a two-year non-compete agreement.  They also prohibit the Arya Quants from disclosing any Arya trade secrets or confidential information. These agreements are valid and subsisting contracts.  As a result of these agreements, the Arya Quants owe Arya a fiduciary duty.  The former Arya Quants' use of the Trading Program infringes Arya's copyright.  Defendants have knowledge of the infringing activity and have induced, caused and materially contributed to the infringing activity by the former Arya Quants.  Such use of the Trading Program by the former Arya Quants is wrongful and constitutes contributory infringement of Arya's copyright by Defendants that has caused Arya actual damages. Defendants' participation in the Arya Quants' wrongdoing constitutes tortious interference, knowing participation in breach of fiduciary duty and a misappropriation and theft of trade secrets.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: COPYRIGHT INFRINGEMENT (AGAINST ALL DEFENDANTS)

28.     Arya repeats and re-allege each and every allegation contained in Paragraphs 1 through 27, inclusive, and makes them a part hereof by reference.

29.     Defendants have willfully infringed and, unless enjoined, likely will continue to willfully infringe Arya's copyright in the Trading Program by using the program, copying the program and reproducing the program.  Defendants have no license, actual or implied, to use the Trading Program and their acts of willful infringement are therefore unlawful

30.     As a result of Defendants' unlawful copyright infringement, Arya has been damaged and Defendants have profited.  Arya is entitled to recover its actual damages and any additional profits of Defendants under 17 U.S.C. §504(a).  In lieu of actual damages and profits, 17 U.S.C. §504(b) permits Arya to elect statutory damages up to $150,000 per act of willful infringement.

31.     Defendants' unlawful copyright infringement has caused Arya immediate and irreparable injury and, unless enjoined, will continue to cause Arya immediate and irreparable injury for which there is no adequate remedy at law.

### SECOND CAUSE OF ACTION: CONTRIBUTORY COPYRIGHT INFRINGEMENT (AGAINST ALL DEFENDANTS)

32.     Arya repeats and re-allege each and every allegation contained in Paragraphs 1 through 27, inclusive, and makes them a part hereof by reference.

33.     The former Arya Quants have willfully infringed and, unless enjoined, likely will continue to willfully infringe Arya's copyright in the Trading Program by using the program, copying the program and reproducing the program.  The former Arya Quants have no license,

actual or implied, to use the Trading Program and their acts of willful infringement are therefore unlawful.

34.     Defendants have knowledge of this infringing activity and have induced, caused and materially contributed to the infringing activity by the former Arya Quants.  Such actions by Defendants are wrongful and constitute contributory infringement of Arya's copyright by Defendants that has caused Arya actual damages.

35.     As a result of Defendants' unlawful contributory copyright infringement, Arya has been damaged and Defendants have profited.  Arya is entitled to recover its actual damages and any additional profits of Defendants under 17 U.S.C. §504(a).  In lieu of actual damages and profits, 17 U.S.C. §504(b) permits Arya to elect statutory damages up to $150,000 per act of willful infringement.

36.     Defendants' unlawful contributory copyright infringement has caused Arya immediate and irreparable injury and, unless enjoined, will continue to cause Arya immediate and irreparable injury for which there is no adequate remedy at law.

### THIRD CAUSE OF ACTION: MISAPPROPRIATION OF TRADE SECRETS THROUGH CONTINUED USE OF TRADING PROGRAM (AGAINST ALL DEFENDANTS)

37.     Arya repeats and re-allege each and every allegation contained in Paragraphs 1 through 27, inclusive, and makes them a part hereof by reference.

38.     The Trading Program constitutes a trade secret of Arya as that term is defined under Texas law.  Defendants were authorized to use the Trading Program only during the term of the relationship between Arya and Dufossat.  After Dufossat terminated that relationship in February 2016, Dufossat no longer had any right to use the Trading Program.

39.     Despite the foregoing, upon information and belief, Defendants have continued to use the Trading Program to filter, evaluate and make energy trades. Defendants acquired and used these trade secrets through the breach of a confidential relationship.  Defendants exploited the trade secrets for their own enrichment and with the intent of depriving Plaintiffs of their rights.  The foregoing conduct constitutes misappropriation of trade secrets under Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b) because Defendants knew or had reason to know at the time they used Arya's trade secrets without express or implied consent to make trades that their knowledge of the Arya trade secrets was acquired under circumstances giving rise to a duty to limit their use.

40.     Defendants' unauthorized use and misappropriation of trade secrets has caused Plaintiffs actual damages.  As a result of Defendants' misappropriation of trade secrets, Plaintiffs are entitled to, and hereby seek, disgorgement of all profits generated by the unauthorized use of the trade secrets through Defendants' execution of trades made after Dufossat terminated its relationship with Arya in February 2016.  Because Defendants' misappropriation of trade secrets was willful and malicious, Plaintiffs are entitled to, and hereby seek, an award of exemplary damages to be determined by the trier of fact under Tex. Civ. Prac. & Rem. Code § 134A.004(b). Finally, because Defendants' misappropriation of trade secrets was willful and malicious, Plaintiffs are entitled to, and hereby seek, an award of attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.005.  Plaintiffs hereby sue for their actual damages, disgorgement of profits and exemplary damages together with attorneys' fees and pre and post-judgment interest at the lawful rate.

## FOURTH CAUSE OF ACTION: THEFT OF TRADE SECRETS THROUGH CONTINUED USE OF TRADING PROGRAM (AGAINST ALL DEFENDANTS)

41.     Arya repeats and re-allege each and every allegation contained in Paragraphs 1 through 27, inclusive, and makes them a part hereof by reference.

42.     The Trading Program constituted a trade secret of Arya as that term is defined under Texas law.  Defendants were authorized to use the Trading Program only during the term of the relationship between Arya and Dufossat.  After Dufossat terminated that relationship in February 2016, Dufossat no longer had any right to use the Trading Program.

43.     Despite the foregoing, upon information and belief, Dufossat has continued to use the Trading Program to filter, evaluate and make energy trades. Dufossat has appropriated the Trading Program without Arya's consent with the intent to deprive Arya of its property.  Upon information and belief, Defendants have stolen, copied, communicated and/or transmitted the Trading Program and have used it to filter, evaluate and make energy trades.

44.     Defendants' theft of trade secrets has caused Plaintiffs actual damages.  As a result of Defendants' theft of trade secrets, Plaintiffs are entitled to, and hereby seek, the value of the trade secrets, which is represented by the profits generated by their theft and unauthorized use by Defendants through their execution of trades following the termination of the Arya-Dufossat relationship. Because Defendants' theft of trade secrets was carried out with actual malice, Plaintiffs are entitled to, and hereby seek, an award of punitive damages to be determined by the trier of fact.  Plaintiffs hereby sue for their actual damages, the value of the trade secrets as represented by the profits generated by their use, and punitive damages together with attorneys' fees and pre and post-judgment interest at the lawful rate.

## FIFTH CAUSE OF ACTION: MISAPPROPRIATION OF TRADE SECRETS THROUGH HIRING OF ARYA QUANTS (AGAINT ALL DEFENDANTS)

45.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

46.     Arya has recently learned that Defendants have hired the Arya Quants to provide the same services they had provided to Defendants when they were employed by Arya. Defendants have made financial payments to the Arya Quants and have purchased computer hardware for their use.   Upon information and belief, the Arya Quants are using Arya's trade secrets to make trade recommendations to Defendants.

47.     The foregoing conduct constitutes misappropriation of trade secrets under Tex. Civ. Prac. & Rem. Code § 134A.002(3)(A) because Defendants knew or had reason to know that by hiring the Arya Quants to make trade recommendations they were acquiring the Arya trade secrets by improper means.   The foregoing conduct also constitutes misappropriation of trade secrets under Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(i) because Defendants used the Arya trade secrets without express or implied consent and used improper means to acquire the trade secrets through the hiring of the Arya Quants.   Finally, the foregoing conduct constitutes misappropriation of trade secrets under Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(c) because Defendants knew or had reason to know at the time they used and acquired Arya's trade secrets without express or implied consent that their knowledge of the Arya trade secrets was derived from or through a person (the Arya Quants) who owed a duty to Arya to maintain its secrecy.

48.     Defendants' unauthorized use and misappropriation of trade secrets has caused Plaintiffs actual damages.  As a result of Defendants' misappropriation of trade secrets, Plaintiffs are entitled to, and hereby seek, disgorgement of all profits generated by the unauthorized use of

the trade secrets through Defendants' execution of trades recommended by the Arya Quants since their hiring by Defendants.  Because Defendants' misappropriation of trade secrets was willful and malicious, Plaintiffs are entitled to, and hereby seek, an award of exemplary damages to be determined by the trier of fact under Tex. Civ. Prac. & Rem. Code § 134A.004(b).  Finally, because Defendants' misappropriation of trade secrets was willful and malicious, Plaintiffs are entitled to, and hereby seek, an award of attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.005.  Plaintiffs hereby sue for their actual damages, disgorgement of profits and exemplary damages together with attorneys' fees and pre and post-judgment interest at the lawful rate.

## SIXTH CAUSE OF ACTION: THEFT OF TRADE SECRETS THROUGH HIRING OF ARYA QUANTS (AGAINST ALL DEFENDANTS)

49.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

50.     Arya has recently learned that Defendants have hired the Arya Quants to provide the same services they had provided to Defendants when they were employed by Arya. Defendants have made financial payments to the Arya Quants and have purchased computer hardware for their use.   Upon information and belief, the Arya Quants are using Arya's trade secrets to make trade recommendations to Defendants.

51.     The Trading Program constitutes a trade secret of Arya as that term is defined under Texas law.  Defendants were authorized to use the Trading Program only during the term of the relationship between Arya and Dufossat.  After Dufossat terminated that relationship in February 2016, Dufossat no longer had any right to use the Trading Program.

52.     Despite the foregoing, upon information and belief, Dufossat, through the Arya Quants it hired, has continued to use the Trading Program to filter, evaluate and make energy trades. Dufossat has appropriated the Trading Program without Arya's consent with the intent to

deprive Arya of its property. Upon information and belief, Defendants, through the Arya Quants they hired, have stolen, copied, communicated and/or transmitted the Trading Program and have used it to filter, evaluate and make energy trades.

53. Defendants' theft of trade secrets has caused Plaintiffs actual damages. As a result of Defendants' theft of trade secrets, Plaintiffs are entitled to, and hereby seek, the value of the trade secrets, which is represented by the profits generated by their theft and unauthorized use by Defendants through their execution of trades following the termination of the Arya-Dufossat relationship. Because Defendants' theft of trade secrets was carried out with actual malice, Plaintiffs are entitled to, and hereby seek, an award of punitive damages to be determined by the trier of fact. Plaintiffs hereby sue for their actual damages, the value of the trade secrets as represented by the profits generated by their use, and punitive damages together with attorneys' fees and pre and post-judgment interest at the lawful rate.

### SEVENTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH CONTRACT (AGAINST ALL DEFENDANTS)

54. Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

55. The Arya Quants are parties to Employment Agreements and Non-Disclosure Agreements. The agreements contain a two-year non-compete agreement. They also prohibit the Arya Quants from disclosing any Arya trade secrets or confidential information. These agreements are valid and subsisting contracts.

56. Arya has recently learned that Defendants have hired the Arya Quants to provide the same services they had provided to Defendants when they were employed by Arya. Upon information and belief, the Arya Quants are using Arya's Trading Program to provide these services to Dufossat. Defendants have made financial payments to the Arya Quants and have

14

purchased computer hardware for their use.   Through these actions, Defendants have willfully and intentionally interfered with the contracts between Arya and the Arya Quants.   Such interference has proximately caused Plaintiffs to suffer actual damage and loss for which they now sue together with prejudgment and post-judgment interest.   Moreover, because Defendants' acts of tortious interference were carried out with actual malice, Plaintiffs are entitled to and hereby seek an award of exemplary damages in an amount to be determined by the trier of fact.

### EIGHTH CAUSE OF ACTION: KNOWING PARTICIPATION IN BREACH OF FIDUCIARY DUTY THROUGH HIRING OF ARYA QUANTS (AGAINST ALL DEFENDANTS)

57.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

58.     The Arya Quants are parties to Employment Agreements and Non-Disclosure Agreements.   The agreements contain a two-year non-compete agreement.   They also prohibit the Arya Quants from disclosing any Arya trade secrets or confidential information. These agreements are valid and subsisting contracts.   As a result of these Agreements, the Arya Quants owe fiduciary duties to Arya.

59.     Arya has recently learned that Defendants have hired the Arya Quants to provide the same services they had provided to Defendants when they were employed by Arya.   Upon information and belief, the Arya Quants are using Arya's Trading Program to provide these services to Dufossat.   Defendants have made financial payments to the Arya Quants and have purchased computer hardware for their use.   Through these actions, Defendants have knowingly participated in the Arya Quants' breaches of fiduciary duties.   Such actions by Defendants have proximately caused Plaintiffs to suffer actual damage and loss for which they now sue together with prejudgment and post-judgment interest.   Moreover, because Defendants' acts of knowing

participation in the Arya Quants' breaches of fiduciary duties were carried out with actual malice, Plaintiffs are entitled to and hereby seek an award of exemplary damages in an amount to be determined by the trier of fact.

**NINTH CAUSE OF ACTION: BREACH OF**
**CONTRACT-IT SERVICES (AGAINST DUFOSSAT)**

60.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein

61.     Plaintiffs and Dufossat entered a valid and enforceable agreement whereby Plaintiffs agreed to provide Dufossat with IT Services.  In turn, Dufossat agreed to pay for these services.  Plaintiffs performed their obligations under the contract by providing Defendants with the IT Services. Dufossat breached the contract by failing to pay the full amount owed for the IT Services.

62.     Dufossat's breach of contract has caused damage to Plaintiffs for which they now sue together with pre-judgment interest, post-judgment interest, attorneys' fees and costs of court.  All conditions precedent to Plaintiffs' claims have occurred or have been satisfied.

**TENTH CAUSE OF ACTION: BREACH OF**
**CONTRACT-QUANT SERVICES (AGAINST DUFOSSAT)**

63.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

64.     Plaintiffs and Dufossat entered a valid and enforceable agreement whereby Plaintiffs agreed to provide Dufossat with recommended UTC trades from the Arya Quants.  In turn, Dufossat agreed to pay 30% of all profits made on UTC trades from the Arya Quant's list of recommended trades.  Plaintiffs performed their obligations under the contract by providing Dufossat with recommended UTC trades.

65.     Dufossat breached the contract by failing to pay the full amount owed for trades made on the Arya Book.  Dufossat similarly breached the contract by making secret trades in the Shadow Book based on the Arya Quant's recommended trades and failing to pay Plaintiffs 30% of the profits from such trades.

66.     Dufossat's breach of contract has caused damage to Plaintiffs for which Plaintiffs now sue together with pre-judgment interest, post-judgment interest, attorneys' fees and costs of court.  All conditions precedent to Plaintiffs' claims have occurred or have been satisfied.

### ELEVENTH CAUSE OF ACTION: PROMISSORY ESTOPPEL (AGAINST DUFOSSAT)

67.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

68.     Plaintiffs agreed to provide Dufossat with recommended UTC trades from the Arya Quants.  In turn, Dufossat agreed to pay 30% of all profits made on UTC trades from the Arya Quant's list of recommended trades.  It was foreseeable to Dufossat, and intended by Dufossat, that Plaintiffs would rely on these promises.  Plaintiffs in fact relied on these promises to their detriment by providing the Quant Services.  Dufossat failed to fulfill its promises by failing to pay the full amount owed for trades made on the Arya Book, by making secret trades in the Shadow Book based on the Arya Quant's recommended trades and by failing to pay Arya 30% of the profits from such trades.  Dufossat's failure to fulfill its promises has caused damage to Plaintiffs for which Plaintiffs now sue together with pre-judgment interest, post-judgment interest, attorneys' fees and costs of court.  All conditions precedent to Plaintiffs' claims have occurred or have been satisfied.

69.     Plaintiffs agreed to provide Dufossat with IT Services.   In turn, Dufossat promised to pay for these services.  It was foreseeable to Dufossat, and intended by Dufossat,

that Plaintiffs would rely on these promises. Plaintiffs in fact relied on these promises to its detriment by providing the IT Services. Dufossat failed to fulfill its promises by failing to pay the full amount owed for the IT Services. Dufossat's failure to fulfill their promises has caused damage to Plaintiffs in excess of the jurisdictional minimum of this Court for which Plaintiffs now sue together with pre-judgment interest, post-judgment interest, attorneys' fees and costs of court. All conditions precedent to Plaintiffs' claims have occurred or have been satisfied.

## TWELFTH CAUSE OF ACTION: QUANTUM MERUIT (AGAINST ALL DEFENDANTS)

70.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

71.     Pleading in the alternative, to the extent there was not a valid and enforceable contract between Plaintiffs and Defendants, Plaintiffs should recover for quantum meruit. Arya provided valuable services to Defendants by supplying Defendants with recommended UTC trades compiled by the Arya Quants. These services were provided specifically for Defendants, and Defendants accepted these services. Defendants had reasonable notice that Plaintiffs expected to be paid for these services. Arya also supplied Defendants with IT Services. These services were provided specifically for Defendants, and Defendants accepted these services. Defendants had reasonable notice that Plaintiffs expected to be paid for these services

72.     As a consequence of the above facts, Plaintiffs are entitled to recover their actual damages, which are in excess of the jurisdictional limits of this Court, under the doctrine of quantum meruit, for which they now sue together with attorneys' fees and pre and post-judgment interest at the lawful rate. Plaintiffs state that they are entitled to recover the reasonable value of the Quant Services provided to Arya in an amount not less than 30% of the profit on all trades

recommended by the Arya Quants, including any Shadow Trades, as well as the reasonable value of the IT Services.

**THIRTEENTH CAUSE OF ACTION: UNJUST
ENRICHMENT (AGAINST ALL DEFENDANTS)**

73.    Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

74.    Pleading in the alternative, to the extent there was not a valid and enforceable contract between Plaintiffs and Defendants, Plaintiffs should recover for unjust enrichment. Defendants wrongfully secured and/or passively received a benefit by making UTC trades based on the Arya Quants' recommendations and by accepting the IT Services.  Defendants would be unjustly enriched if they are not required to pay for the Quant Services and IT Services and it would be unconscionable for Defendants to retain these benefits.  Defendants obtained these benefits from Arya by fraud, duress, or the taking of undue advantage by secretly making additional trades in the Shadow Book and by refusing to pay for the IT Services.

75.    As a consequence of the above facts, Plaintiffs are entitled to recover their actual damages, which are in excess of the jurisdictional limits of this Court, under the doctrine of unjust enrichment, for which they now sue together with attorneys' fees and pre and post-judgment interest at the lawful rate.  Plaintiffs state that they are entitled to recover the reasonable value of the Quant Services provided to Arya in an amount not less than 30% of the profit of all trades recommended by the Arya Quants, including any Shadow Trades, as well as the reasonable value of the IT Services.

## FOURTEENTH CAUSE OF ACTION: MISAPPROPRIATION OF TRADE SECRETS THROUGH SHADOW TRADES (AGAINST ALL DEFENDANTS)

76.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein

77.     The Arya Quants' recommended trades constituted trade secrets as that term is defined under Texas law.  Defendants were authorized to make the recommended trades only in the account set up for the execution of such trades and only to the extent they intended to pay Plaintiffs 30% of the profits generated from such trades.  Defendants acquired and used the trade secrets through the breach of a confidential relationship.  Defendants used the information to make secret trades in the Shadow Book based on the Arya Quant's recommended trades. Defendants exploited the trade secrets for their own enrichment and with the intent of depriving Plaintiffs of their right to share in the profits generated from the recommended trades.  The foregoing conduct constitutes misappropriation of trade secrets under Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b) because Defendants knew or had reason to know at the time they used Arya's trade secrets without express or implied consent to make the shadow trades that their knowledge of the Arya trade secrets was acquired under circumstances giving rise to a duty to limit their use.

78.     Defendants' unauthorized use and misappropriation of trade secrets caused Plaintiffs actual damages.  As a result of Defendants' misappropriation of trade secrets, Plaintiffs are entitled to, and hereby seek, disgorgement of all profits generated by the unauthorized use of the trade secrets through Defendants' execution of the shadow trades.  Because Defendants' misappropriation of trade secrets was willful and malicious, Plaintiffs are entitled to, and hereby seek, an award of exemplary damages to be determined by the trier of fact under Tex. Civ. Prac. & Rem. Code § 134A.004(b).  Finally, because Defendants' misappropriation of trade secrets

was willful and malicious, Plaintiffs are entitled to, and hereby seek, an award of attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.005.  Plaintiffs hereby sue for their actual damages, disgorgement of profits and exemplary damages together with attorneys' fees and pre and post-judgment interest at the lawful rate

### FIFTEENTH CAUSE OF ACTION: THEFT OF TRADE SECRETS THROUGH SHADOW TRADES (AGAINST ALL DEFENDANTS)

79.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein

80.     The Arya Quants' recommended trades constituted trade secrets as that term is defined under Texas law.  Defendants were authorized to make the recommended trades only in the account set up for the execution of such trades and only to the extent they intended to pay Plaintiffs 30% of the profits generated from such trades.  Instead, Defendants used the information to make secret trades in the Shadow Book based on the Arya Quant's recommended trades.  In doing so, Defendants copied the trade secrets and transmitted them to third parties without Plaintiff's consent.  Such actions constitute theft of trade secrets under Texas law.

81.     Defendants' theft of trade secrets caused Plaintiffs actual damages.  As a result of Defendants' theft of trade secrets, Plaintiffs are entitled to, and hereby seek, the value of the trade secrets, which is represented by the profits generated by their theft and unauthorized use by Defendants through their execution of the shadow trades.  Because Defendants' theft of trade secrets was carried out with actual malice, Plaintiffs are entitled to, and hereby seek, an award of punitive damages to be determined by the trier of fact.  Plaintiffs hereby sue for their actual damages, the value of the trade secrets as represented by the profits generated by their use, and punitive damages together with attorneys' fees and pre and post-judgment interest at the lawful rate.

21

## SIXTEENTH CAUSE OF ACTION: FRAUD (AGAINST ALL DEFENDANTS)

82.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

83.     In or around June 2014, Arya approached Defendants and offered to provide trading analysts called "Quants" who could be trained by Arya to use the Trading Program to provide Defendants with recommended UTC trades.   Arya agreed to provide to Dufossat recommended UTC trades formulated through quantitative analysis of market information. Soniat agreed that Dufossat would pay Arya 30% of all profits made by Defendants on Arya's trade recommendations. Upon information and belief, Soniat's promises were fraudulent because Soniat and Dufossat, at the time the promises were made, had no intent of performing the agreement.   Plaintiffs relied on Soniat's representations to their detriment by training the Arya Quants and providing valuable services to Defendants.    Such reliance was reasonable, foreseeable and intended by Defendants.

84.      Defendants' acts of fraud have caused Plaintiffs actual damages for which they now sue together with prejudgment and post-judgment interest.  Plaintiffs are also entitled to and hereby seek an award of exemplary damages in an amount to be determined by the trier of fact.

## SEVENTEENTH CAUSE OF ACTION: NEGLIGENT MISREPRESENTATION (AGAINST ALL DEFENDANTS)

85.     Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein.

86.     In or around June 2014, Arya approached Defendants and offered to provide trading analysts called "Quants" who could be trained by Arya to use the Trading Program to provide Defendants with recommended UTC trades.   Arya agreed to provide to Dufossat recommended UTC trades formulated through quantitative analysis of market information.

Soniat agreed that Dufossat would pay Arya 30% of all profits made by Defendants on Arya's trade recommendations. Soniat's statements were made for the guidance of others and were made in the course of Dufossat's business and in a transaction in which Soniat and Dufossat had a pecuniary interest.  Soniat failed to exercise reasonable care or competence in communicating such information to Plaintiffs. Plaintiffs relied on Soniat's representations to their detriment by training the Arya Quants and providing valuable services to Defendants.  Such reliance was reasonable, foreseeable and intended by Defendants.

87.   Defendants' acts of negligent misrepresentation have caused Plaintiffs actual damages for which they now sue together with prejudgment and post-judgment interest. Plaintiffs are also entitled to and hereby seek an award of exemplary damages in an amount to be determined by the trier of fact.

## EIGHTEENTH CAUSE OF ACTION: TORTIOUS INTERFERENCE WITH DUFOSSAT-ARYA CONTRACT (AGAINST SONIAT)

88.   Plaintiffs incorporate by reference the allegations made in paragraphs 1 through 27 above as if fully set forth herein

89.   As set forth above, there was a contract between Plaintiffs and Dufossat for Arya to provide Quant Services to Dufossat.  Dufossat was to make the trades recommended by Arya on the Arya Book and was to pay 30% of its profits.

90.   Soniat directed and arranged for the shadow trades to be made in the Shadow Book in an attempt to personally enrich himself at the expense of both Plaintiffs and Dufossat. Given the agreement between Plaintiffs and Dufossat, Soniat's actions knowingly exposed Dufossat to substantial legal liability.  Moreover, Soniat intended to utilize the profits generated by the shadow trades for his own personal benefit rather than for the benefit of Dufossat. Soniat's actions were so contrary to Dufossat's best interests that his actions could only have

been motivated by personal interests.  As a result of the foregoing facts, despite the relationship between Soniat and Dufossat, Soniat was legally capable of tortiously interfering with the contract between Dufossat and Arya.  See, e.g., *Holloway v. Skinner*, 898 S.W.2d 793 (1995).

91.      By directing and arranging for the shadow trades to be made in the Shadow Book with the intent that Plaintiffs would not receive payment for its share of the profits Dufossat made on the shadow trades, Soniat tortuously interfered with the agreement between Dufossat and Plaintiffs.  Soniat intentionally and tortiously interfered with the agreement by causing a breach of the agreement's term and by making Dufossat's performance of its duties thereunder impossible.  Soniat's acts of interference were neither privileged nor justified.  Moreover, they were carried out with actual malice as that term is defined by Texas law.

92.      Soniat's acts of tortious interference have caused Plaintiffs actual damages in excess of the jurisdictional minimum of this Court for which they now sue together with prejudgment and post-judgment interest.   Moreover, because Soniat's acts of tortious interference were carried out with actual malice, Plaintiffs are entitled to and hereby seek an award of exemplary damages in an amount to be determined by the trier of fact.

## **DEMAND FOR JURY TRIAL**

93.      Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of all issues so triable.

## **ATTORNEYS' FEES**

94.      Plaintiffs are entitled to recover reasonable attorneys' fees and costs pursuant to Texas Civil Practice and Remedies Code sections 38.001 and 134A.005 as well as 17 U.S.C. §505.  All conditions precedent to Plaintiffs' claim for attorneys' fees have been satisfied or will be satisfied before trial.

## CONDITIONS PRECEDENT

95.     All conditions precedent to Plaintiffs' right to recover the relief sought herein have occurred or have been performed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court award relief as follows:

(1)     An Order under 17 U.S.C. §502 that Defendants and their agents, servants, employees, consultants,  contractors, employees, officers and all other persons acting in concert with them or participating with them directly or indirectly be preliminarily and permanently enjoined from directly or indirectly infringing, in any manner, Arya's copyright in the Trading Program;

(2)     Judgment that Defendants be ordered to pay Arya its actual damages due to Defendants' copyright infringement and contributory copyright infringement pursuant to 17 U.S.C. §504(b);

(3)     Judgment that Defendants be ordered to pay Arya statutory damages of no more than $150,000 per act of infringement due to Defendants' willful copyright infringement and contributory copyright infringement pursuant to 17 U.S.C. §504(c);

(4)     An Order under 17 U.S.C. §503 that all infringing software be impounded from each Defendant;

(5)     Judgment that Defendants be ordered to pay Plaintiffs their actual damages, including all actual and compensatory damages as well as disgorgement of Defendants' ill-gained profits;

(6)     Judgment that Defendants be ordered to pay Plaintiff exemplary damages in an amount to be determined by the trier of fact under Texas common law and Tex. Civ. Prac. & Rem. Code § 134A.004(b);

(7)     Judgment that Defendants be ordered to pay costs, including a reasonable attorneys' fee;

(8)     Pre-judgment and post-judgment interest as provided by law; and

(9)     That Plaintiff have such other and further relief to which it may be justly entitled.

Dated: April 5, 2017                    Respectfully submitted,

*/s/Eric D. Pearson*
Eric D. Pearson
Texas State Bar No. 15690472/ SD#575279
**HEYGOOD, ORR & PEARSON**
6363 N. State Highway 161, Suite 450
Irving, Texas 75038
(214) 237-9001
(214) 237-9002
Email:  eric@hop-law.com

**ATTORNEYS FOR PLAINTIFF**


**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

*/s/Eric D. Pearson*
Eric D. Pearson


**CERTIFICATE OF SERVICE**

I hereby certify that on the 5th day of April, 2017, in accordance with the Federal Rules of Civil Procedure, a true and correct copy of the foregoing instrument has been duly and properly served upon all counsel of record by electronic filing.

*/s/ Eric D. Pearson*
Eric D. Pearson