United States District Court
Southern District of Texas

**ENTERED**

August 22, 2019

David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ARYA RISK MANAGEMENT SYSTEMS, PVT. LTD. and WINCAB RISK SOLUTION, LLC, | § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-16-3595 |
| DUFOSSAT CAPITAL PUERTO RICO, LLC, DUFOSSAT CAPITAL, LP, DUFOSSAT CAPITAL I, LLC, DUFOSSAT CAPITAL GP, LLC, and ASHTON SONIAT, | § § § § § § | |
| Defendants. | § | |

| | | |
|---|---|---|
| MANOJ GHAYALOD | § § | |
| Plaintiff, | § § | |
| v. | § § | |
| DUFOSSAT CAPITAL PUERTO RICO, LLC, and ASHTON SONIAT, | § § § | |
| Defendants/ Counter-Plaintiffs, | § § § | |
| v. | § § | |
| PALLAVI GHAYALOD | § § | |
| Counter-Defendant. | § | |

## <u>MEMORANDUM AND RECOMMENDATION</u>

Pending before the court[1] is Defendants' Motion for Sanctions

Related to Plaintiffs' Spoliation of Evidence and Failure to

---

[1]    This case was referred to the undersigned magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72.  <u>See</u> Doc. 47, Ord. Dated Aug. 14, 2017.

Disclose Evidence (Doc. 179).  The court has considered the motion, all related briefing, the testimony and arguments offered at the two hearings, other relevant evidence, and the applicable law.  For the reasons set forth below, the court **RECOMMENDS** that Defendants' motion for sanctions related to Plaintiffs' spoliation of evidence and failure to disclose evidence be **GRANTED** in part and **DENIED** in part.

## I.  Case Background

This case concerns a failed business relationship among the parties, involving the development and use of a computer application in energy trading.

## A.  Origins of this Action

The case now pending before this court is a combination of three cases:

### 1.  Ghayalod v. Dufossat Capital Puerto Rico, LLC, et al. Filed in Montgomery County, Texas

On March 24, 2016, Manoj Ghayalod ("Manoj") filed a case against Dufossat Capital Puerto Rico, LLC, ("Dufossat") and Ashton Soniat ("Soniat") in the 284th Judicial District Court of Montgomery County.[2]

While in state court, Manoj amended his petition; Dufossat amended its counterclaim against Manoj; and Dufossat filed an

---

[2]    See Ghayalod v. Dufossat Capital Puerto Rico, LLC, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-10, Manoj's Orig. Pet. in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated Mar. 24, 2016.

original petition asserting claims against Pallavi Ghayalod ("Pallavi"), owner of Arya Risk Management Systems, Pvt. Ltd., ("Arya") and Wincab Risk Solution, LLC, ("Wincab") (collectively, "Arya Plaintiffs") and previously a nonparty to the case.[3]  In the petition against Pallavi, Dufossat also reasserted all of its claims against Manoj, thereby fully supplanting its amended counterclaim.[4]

Pallavi removed the case on November 20, 2017.[5]  On November 29, 2017, the removed case was consolidated into this present action before this court.[6]

### 2. <u>Arya, et al. v. Dufossat, et al.</u><br><u>Filed in Harris County, Texas</u>

On March 24, 2016, Arya Plaintiffs filed a case against Dufossat and Soniat in the 80th Judicial District Court of Harris

---

[3]     See <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-9, Manoj's 1st Am. Pet. in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated Feb. 24, 2017; <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-10, Dufossat's 1st Am. Countercl. Against Manoj in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated July 5, 2017; <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-8, Dufossat's Orig. Pet. Against Pallavi in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated Oct. 31, 2017.

[4]     <u>Compare</u> <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-10, Dufossat's 1st Am. Countercl. Against Manoj in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated July 5, 2017 <u>with</u> <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-8, Dufossat's Orig. Pet. Against Pallavi in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated Oct. 31, 2017.

[5]     See <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1, Not. of Removal Dated Nov. 20, 2017.

[6]     See <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 7, Ord. to Consolidate Cases Dated Nov. 29, 2017.

County.[7]  Arya Plaintiffs dismissed the state-court action after amending the pleading in the present federal case to include all claims from the Harris County lawsuit.[8]

### 3. Arya, et al. v. Dufossat, et al. Present Action

On December 7, 2016, Arya Plaintiffs filed the present action against Dufossat and Soniat.[9]  On April 5, 2017, by agreement of the parties and with this court's approval, Arya Plaintiffs amended their complaint to include claims from the Harris County action against Dufossat, Dufossat Capital, LP, Dufossat Capital I, LLC, Dufossat Capital GP, LLC, and Ashton Soniat.[10]  On April 24, 2017, Dufossat amended its counterclaim against Arya Plaintiffs.[11]

### B. Live Pleadings in the Present Action

As the court can best ascertain, the live, affirmative pleadings in this case are: (1) Arya Plaintiffs' Second Amended Complaint;[12] (2) Dufossat's First Amended Counterclaim;[13] (3) Manoj's

---

[7]   See Doc. 19, Jt. Mot. for Leave to File Am. Pleadings p. 1.

[8]   See Doc. 19, Jt. Mot. for Leave to File Am. Pleadings pp. 2-3.

[9]   See Doc. 1, Compl.

[10]   See Doc. 19, Jt. Mot. for Leave to File Am. Pleadings p. 2; Doc. 20, Ord. Dated Mar. 10, 2017; Doc. 26, Arya Pls.' 2$^d$ Am. Compl.

[11]   See Doc. 28, Dufossat's 1st Am. Countercl.

[12]   See Doc. 26, Arya Pls.' 2$^d$ Am. Compl.

[13]   See Doc. 28, Dufossat's 1st Am. Countercl.

First Amended Petition;[14] and (4) Dufossat's Original Petition Against Manoj and Pallavi.[15]

## C.  <u>Procedural History Since the Filing of the Motion for Sanctions</u>

On November 30, 2018, Defendants filed the pending Motion for Sanctions Related to Plaintiffs' Spoliation of Evidence and Failure to Disclose Evidence.[16]  Also on November 30, 2018, the parties filed five motions for partial summary judgment and five motions to strike the testimony of various experts.[17]  On December 11, 2018, Arya Plaintiffs filed a response to Defendants' motion for sanctions, and Manoj filed a response two days later.[18]

The court set a motion hearing on December 18, 2018.[19] One day before the hearing, Manoj and Pallavi filed a motion to quash subpoenas commanding their attendance at the hearing.[20]  They did

---

[14]    <u>See</u> <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-9, Manoj's 1st Am. Pet. in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated Feb. 24, 2017.

[15]    <u>See</u> <u>Ghayalod v. Dufossat Capital Puerto Rico, LLC</u>, Civ. Action No. H-17-3553 (S.D. Tex.), Doc. 1-8, Dufossat's Orig. Pet. Against Manoj & Pallavi in Case No. 16-03-3657 (284th Jud. Dist. Ct.) Dated Oct. 31, 2017.

[16]    <u>See</u> Doc. 179, Defs.' Mot. for Sanctions Related to Pls.' Spoliation of Evid. & Failure to Disclose Evid.

[17]    <u>See</u> Docs. 180-181, 183-190, Mots.  Two days prior to Defendants' filing of the pending motion for sanctions, the parties had filed four dispositive motions.  <u>See</u> Docs. 175-178, Mots.

[18]    <u>See</u> Doc. 192, Arya Pls.' Resp. to Defs.' Mot. for Sanctions Related to Spoliation of Evid. & Failure to Disclose Evid.; Doc. 193, Manoj's Resp. to Defs.' Mot. for Sanctions Related to Spoliation of Evid. & Failure to Disclose Evid.

[19]    <u>See</u> Doc. 191, Not. of Setting Dated Dec. 5, 2018; Doc. 195, Not. of Setting Dated Dec. 17, 2018.

[20]    <u>See</u> Doc. 194, Manoj & Pallavi's Mot. to Quash Subpoenas.

not attend the hearing, and Defendants moved the court to hold Manoj and Pallavi in contempt for failing to appear.[21]  The court denied the motion but noted that Manoj and Pallavi were both "directly involved in spoliation of evidence" and were missing their opportunity to provide testimony on their behalf in opposition to the motion for sanctions.[22]  The court added that one-sided affidavits would garner little weight in light of Manoj and Pallavi's failure to attend and undergo cross-examination at the hearing.[23]

The court heard the testimony of Vance Townsend, a Rarity employee who examined the EMC Storage Unit ("EMC unit"), a device that weighs almost 100 pounds and costs more than $30,000.[24]  Townsend testified that the EMC unit was physically damaged when he received it, and neither the controller device nor the memory module functioned properly.[25]  As a result, the history of data transactions could not be recovered.[26]  Without access to these logs, Townsend testified that there was no way for Defendants to show that Plaintiffs copied Defendants' data for their own use.[27]

---

[21]  See Doc. 201, Hr'g Tr. Dated Dec. 21, 2018 p. 79.

[22]  Id. pp. 79-80.

[23]  See id. p. 80.

[24]  See id. pp. 12-13, 25-43, 45-46, 50-59.

[25]  Id. p. 58

[26]  See id. p. 56.

[27]  See id. pp. 41-42.

Defendants moved the court to continue the response deadlines on the motions for partial summary judgment, to dismiss, and to strike expert testimony.[28]  The court granted the motion.[29]  As of the filing of this Memorandum and Recommendation, no dates have been set for the responsive briefs on those motions.

Plaintiffs moved to compel access to the EMC unit and four laptops for inspection by their experts.[30]  The court granted that motion and continued the hearing until "after Plaintiff has an opportunity to examine the four laptops to see if anything on there predates [Manoj's] wiping of them, reformatting them, and [to see] if that [EMC unit] can be booted up."[31]

The parties called on the court to assist in disputes arising in relation to the court's order of inspection.[32]  On February 20, 2019, and February 27, 2019, Plaintiffs filed two declarations by Andrew von Ramin Mapp ("Mapp"),[33] a data analyst who inspected the

---

[28]    See id. p. 83.

[29]    See id.

[30]    See id. pp. 77-78.

[31]    Id. p. 83; see also id. p. 78; Doc. 199, Min. Entry Dated Dec. 18, 2018.

[32]    See Doc. 203, Defs.' Req. for Confirmation of Ruling Related to Inspection of Dell EMC Storage Unit & Computers; Doc. 204, Pls.' Mot. to Compel Inspection & Testing of EMC Unit & Resp. to Defs.' Req. for Confirmation of Ruling; Doc. 206, Ord. Dated Jan. 25, 2019.

[33]    This individual filed declarations under the names Andrew von Ramin Mapp and Andrew von Marin Rapp.  For no particular reason, the court has selected to use the former appellation.

EMC unit and the computers to provide expert testimony.[34] Defendants filed a motion to strike his testimony, and Arya Plaintiffs and Pallavi filed a response opposing the motion.[35]

After the court issued a notice setting the continuation of the sanctions hearing on April 29, 2019, Defendants served subpoenas on Manoj and Pallavi commanding their attendance at the hearing.[36] Manoj and Pallavi moved to quash the subpoenas, and the court denied their motion.[37]

When the hearing resumed on April 29, 2019, Townsend, Manoj, and Pallavi offered testimony.[38] Townsend described Mapp's inspection of the EMC unit and laptops, stating that he copied all of the data hard drives but did not attempt to boot the EMC unit or attempt to ascertain whether the controllers were damaged.[39] Although Mapp copied the hard drives of all four laptops, Townsend explained, Mapp only forensically examined one of them at Manoj's direction due to cost concerns.[40]

---

[34]    See Doc. 207, Decl. of Mapp Dated Feb. 20, 2019; Doc. 208, Decl. of Mapp Dated Feb. 27, 2019.

[35]    See Doc. 209, Defs.' Mot. to Strike the Expert Test. of Mapp; Doc. 211, Arya Pls. & Pallavi's Resp. to Defs.' Mot. to Strike Expert Test. of Mapp.

[36]    See Doc. 210, Not. of Setting Dated Apr. 3, 2019; Doc. 217, Manoj & Pallavi Ghayalod's Mot. to Quash Subpoenas p. 2.

[37]    See Doc. 217, Manoj & Pallavi Ghayalod's Mot. to Quash Subpoenas; Doc. 218, Ord. Dated Apr. 25, 2019.

[38]    See Doc. 223, Tr. of Hr'g Dated Apr. 29, 2019.

[39]    See id. pp. 10-11.

[40]    See id. pp. 11, 21.

When asked how information related to log files could be accessed given the condition of the EMC unit, Townsend stated:

> Those log files are basically lost.  Without being able to get those controllers operational, to be able to extract those logs, you have no historical transactions on that device.   So. other devices, other data repositories that were created or were destroyed, copies that were made to other devices that were connected to extract data off of the device, all of that is no longer available.[41]

Further, he testified that Plaintiffs' decision to only forensically examine one of the laptops out of the four available devices was attributable to Manoj.[42]

After Manoj and Pallavi testified, Arya Plaintiffs and Pallavi called Allan Buxton ("Buxton"), a forensic data analyst, to the stand.[43]  Defendants objected to the admission of Buxton's expert testimony because he was "an undisclosed expert."[44]  Arya Plaintiffs and Pallavi's attorney explained that Mapp, who had submitted declarations regarding the inspection of the EMC unit and laptops was "not involved in the case any longer" and that they retained Buxton, who had a different "area of focus" than Mapp.[45]  Buxton's specialty was "forensics and data recovery" whereas Mapp's focus was "the issue of the recovery of the data, the publicly available

---

[41]     See id. p. 11.

[42]     See id. p. 21.

[43]     See id. p. 197.

[44]     Id. p. 205.

[45]     Id. pp. 206, 208.

9

market data that they go out and capture, whether it could be
recovered."[46]   The attorney stated, "[Defendants] moved to strike
[Mapp's] declaration, which was only focused on one particular
issue.   And [Arya Plaintiffs and Pallavi] decided to use a
different expert on another issue, and that's this witness."[47]

The court did not allow Buxton to testify in place of Mapp
because Plaintiffs had not disclosed him as an expert witness.[48]
After allowing a period for attorney oral argument, the court set
a post-hearing briefing schedule and adjourned the hearing.[49]   Two
days after the hearing, the court ordered Pallavi to produce to the
court and opposing counsel the shipping documents for the EMC unit,
as well as an affidavit disclosing:

> the date that the [EMC unit] came back into [Plaintiff
> Arya's] possession, the name of the person who requested
> return of the [EMC unit] from police officials in India,
> the date of that request, the name of Arya employee who
> took possession of that [EMC] unit from police officials
> when it was returned and the name of the employee who
> prepared the EMC unit for shipment.[50]

Pallavi submitted a declaration stating:

> [T]he EMC [u]nit that is the subject of Dufossat's Motion
> for Sanctions was at one time in the custody of the
> police in India.   In May 2018, Mr. Pearson, my attorney,
> informed me that I needed to reclaim the EMC [u]nit from

---

[46]     Id. p. 206.

[47]     Id. p. 209.

[48]     See id. pp. 210, 216.

[49]     See id. pp. 232-35.

[50]     Doc. 222, Ord. Dated May 1, 2019 p. 1.

the Indian police and ship it to him in Texas. Thereafter, on May 21, 2018, Indian attorney Rajas Pringle requested that the EMC unit be released back to [Plaintiff] Arya. Mr. Wasim Baig, my employee, picked up the EMC [u]nit on May 25, 2018.[51]

According to Pallavi, Gurubasu Irale prepared the EMC unit for shipping, and it was shipped on May 26, 2018.[52]

Attached to the declaration are copies of two documents and a photograph of a shipping label.[53] The first document was a shipping consignment note dated May 26, 2018, that indicated an item of the EMC unit's approximate description was to be sent to East Quogue, New York.[54] The second document was a receipt with a partially illegible date that indicated a similar item was to be sent from East Quogue, New York, to Irving, Texas, with an expected delivery date of June 23, 2018.[55] The package was insured for up to fifty dollars.[56] The third attachment was a photographed shipping label dated June 27, 2018, that indicated a package was sent from Irving, Texas, to Rarity Solutions in Houston.[57]

On May 20, 2019, Defendants filed a post-hearing brief on

---

[51]   Doc. 226, Decl. of Pallavi p. 2.

[52]   See id.

[53]   See id. Exs. A-C.

[54]   See Doc. 226-1, Ex. A to Decl. of Pallavi, Non-Negotiable Consignment Note Dated May 26, 2018.

[55]   See Doc. 226-2, Ex. B to Decl. of Pallavi, U.S. Postal Service Receipt.

[56]   See id.

[57]   See Doc. 226-3, Ex. C to Decl. of Pallavi, Shipping Label.

sanctions.[58]  On June 3, 2019, Arya Plaintiffs and Pallavi filed a response to Defendants' post-hearing brief, and Manoj separately filed a response.[59]  On June 10, 2019, Defendants replied to the responses.[60]

The briefing on the motion for sanctions is now complete and ready for the court's consideration and ruling.

## II.  Spoliation Standards

"Spoliation is the destruction or the significant and meaningful alteration of evidence." Rimkus Consulting Grp., Inc. v. Cammarata, 688 F. Supp. 2d 598, 612 (S.D. Tex. 2010).  Routine deletion of electronically stored information is generally not considered spoliation unless there is a duty to preserve information, The duty to preserve evidence arises when a party has notice that certain documents are relevant to litigation.  See Quantlab Tech., Ltd. v. Godlevsky, 4:09cv4039, 2014 WL 651944, *8 (S.D. Tex. Feb. 19, 2014)(unpublished).

Federal Rule of Civil Procedure 37 ("Rule") permits the court to impose a wide range of sanctions for discovery violations.  Rule 37 sets forth examples of the sanctions the court may impose,

---

[58]    See Doc. 229, Defs.' Post-Hr'g Mem. Regarding Appropriate Sanctions for Spoliation of Evid. & Failure to Disclose Evid.

[59]    See Doc. 231, Arya Pls. & Pallavi's Post-Hr'g Resp. to Defs.' Mot. for Sanctions Related to Spoliation of Evid.; Doc. 232, Manoj's Post-Hr'g Response to Defs.' Mot. for Spoliation Sanctions.

[60]    See Doc. 233, Defs.' Combined Reply to Resps. to Mem. Related to Appropriate Sanctions for Spoliation of Evid. & Failure to Disclose Evid. & Objs. to Add'l Evid. Introduced by Arya.

including prohibiting a disobedient party from supporting or defending a claim, striking pleadings in whole or in part, or rendering a default judgment. See Fed. R. Civ. P. 37(b)(2)(A)(ii), (iii), (vi). The court may also consider whether a spoliation instruction to the trier of fact would adequately address the discovery misconduct of a party. Quantlab Tech., Ltd., at *8.

In Moore v. CITGO Ref. & Chemicals Co., L.P., 735 F.3d 309 (5th Cir. 2013), the Fifth Circuit found that the following four factors must be present before a district court may enter death penalty sanctions: (1) "the refusal to comply results from willfulness or bad faith and is accompanied by a clear record of delay or contumacious conduct; (2) the violation of the discovery order must be attributable to the client instead of the attorney; (3) the violating party's misconduct must substantially prejudice the opposing party; and (4) a less drastic sanction would not substantially achieve the desired deterrent effect." Moore, 735 F.3d at 316 (internal quotations omitted). "'Bad faith' generally refers to destruction for the purpose of hiding adverse evidence. Negligent destruction, as opposed to bad faith destruction, is inadequate grounds for a sanction." Michael Kors, LLC v. Hernandez Int'l Inc., No. 4:15-cv-0844, 2016 WL 6306129 at *8 (S.D. Tex. Oct. 27, 2016). "The spoliating party may rebut the presumption [of relevance and prejudice] by showing that . . . the evidence would not have been helpful to the innocent party." Id. at 617.

13

### III. Proposed Findings of Fact

The court affords considerable weight to the hearing testimony of Townsend regarding the condition of the EMC unit and the inability to access log information.  The court credits the testimony of Manoj and Pallavi with regard to their actions of wiping the laptops and mailing the EMC unit.  However, the court affords no credit to their asserted motivations.

As discussed below, the court finds that the wiping of the laptops and the destruction of the EMC unit was intentional and irreparably interferes with Defendants' ability to prove their affirmative claims or to defend against Plaintiffs' causes of action.  The court also finds that Manoj's and Pallavi's conduct, as it relates to the EMC unit and the laptops, as well as other behavior both prior to the filing of these lawsuits and during the course of these proceedings, has been in bad faith as explained below.  However, the court does not find that all bad faith conduct warrants sanctions.  Finally, Defendants have failed, at this stage, to prove the loss of any information from Arya Plaintiffs' locking Defendants out of their email system.

### A. __EMC Unit__

In recalling how the EMC unit was originally received, Townsend noted that the 100-pound device was simply "shipped with some bubble wrap in a cardboard box."[61]  The unit was "bent all the

---

[61]     See Doc. 223, Tr. of Hr'g Dated Apr. 29, 2019 p. 12.

way around the device [and] [s]ome of the devices were partially extracted from the chassis."[62]   Pallavi testified that Arya Plaintiffs used the cheapest method possible for delivery.[63]   The EMC unit, which was worth over $30,000, was only insured for fifty dollars.

Pallavi further testified that she was in New York when her counsel asked her to ship the EMC unit and that she proceeded to tell "our office boy" to "ship the machine to Texas."[64]   Pallavi never inquired about how to best package the EMC unit and admitted giving no instructions on how the EMC unit was to be shipped.[65]   She conceded that, "Typically these kind of machines are not supposed to be shipped internationally."[66]

Instead of being shipped directly to Texas, the EMC unit was shipped to Manoj and Pallavi's residence in New York, where it sat for three weeks before it was finally shipped to Arya Plaintiffs' counsel in Texas.[67]   Approximately one month passed after Pallavi received the EMC Storage Unit in New York before it reached her

---

[62]   Id.

[63]   See id. p. 51.

[64]   See id. pp. 50, 90.

[65]   See id. pp. 49-53.

[66]   Id. p. 52.

[67]   See Doc. 229, Defs.' Post-Hr'g Mem. Regarding Appropriate Sanctions for Spoliation of Evid. & Failure to Disclose Evid. p. 17.

counsel.[68]

While Plaintiffs point to comments from the bench in hearings that refer to the shipping and handling process of the EMC unit as negligent or grossly negligent,[69] upon further review of the testimony and other evidence as a whole, the court has determined this spoliation was done intentionally. The court finds the statement by Dufossat Defendant's counsel, "[I]t's a lot more difficult to prove – not more difficult – it's virtually impossible to prove our claims that they misappropriated our trade secrets"[70] to be credible in light of the facts surrounding this spoliation.

## B. **Laptops**

It is undisputed that Manoj reformatted the computers in his possession to prevent Dufossat from monitoring his activity. Plaintiffs invoke Rule 37(e)'s requirement that, in order to sanction a party for loss of electronic information, the court must find that the party intended to deprive another party of using the information in the litigation.

More than just wanting to avoid having anyone monitor his general activity, Manoj candidly admitted a main reason for reformatting the computers in his possession was so Dufossat could

---

[68]   See id.

[69]   See Doc. 231, Arya Pls. & Pallavi's Post-Hr'g Resp. to Defs.' Mot. for Sanctions Related to Spoliation of Evid. p. 19.

[70]   Doc. 201, Hr'g Tr. Dated Dec. 21, 2018 p. 12.

16

not monitor communication between Manoj and his attorney.[71]   As
Manoj's attorney notes in questioning his client, this reformatting
was done "literally on the heels of your partner unbeknownst to you
tricking you to go to Puerto Rico, locking you out of the office,
and locking you out of the computer system."[72]   The court therefore
finds that the wiping of the laptops was done in anticipation of
litigation with Defendants.

Most troubling is the computers were not used whatsoever after
the reformatting.[73]   With the opportunity to eradicate any mystery
surrounding the computers, Manoj - for supposedly cost associated
reasons - decided to only have one of the four computers examined
and recovered.[74]   With the lack of an attempt to clearly recover all
of the information on the computers after all of this time, the
court finds that the spoliation of evidence on these computers was
done intentionally with the purpose of depriving Defendants of
information.

## C. __Bad Faith Conduct__

The court finds that, throughout this litigation, Manoj and
Pallavi have acted in bad faith.   Highlighting these actions, a
motion to compel production and inspection of the EMC unit was

---

[71]     See Doc. 223, Tr. of Hr'g Dated Apr. 29, 2019 p. 159.

[72]     See id. p. 161.

[73]     See id. pp. 189-190.

[74]     See Doc. 223, Tr. of Hr'g Dated Apr. 29, 2019 p. 21.

filed on March 23, 2018.[75]  Thereafter, Pallavi proceeded to file a criminal complaint with the Indian authorities and turned the EMC Storage Unit over in India on April 3, 2018, preventing Defendants from inspecting the unit.[76]  Upon being questioned a month later in a deposition about when she turned the unit over to Indian authorities, Pallavi responded it was somewhere in the 2016 or 2017 time frame.[77]  Like many of her answers to straight forward questions in the April hearing, she responded to being questioned about her answer in that deposition with "I don't know."[78]

While there are different sides to every story, the court finds that Pallavi has attempted to tamper with witnesses at the very least by revoking Mr. Anands' visa and filing criminal complaints in India against potential witnesses.[79]  Furthermore, there is reason to believe that Plaintiffs have failed to disclose information during discovery that has resulted in the Defendants' having to engage in personal investigation.[80]  One example of this non-tolerable conduct was providing an address during a deposition that led to a vacant lot.[81]

---

[75]     See id. p. 46.

[76]     See id. p. 57.

[77]     See id. p. 61.

[78]     Id.

[79]     See id. pp. 63, 89.

[80]     See id. pp. 70, 74-75.

[81]     See Doc. 201, Hr'g Tr. Dated Dec. 21, 2018 p. 81.

Concerning further acts of bad faith throughout this litigation process, Plaintiffs' counsel failed to disclose to opposing counsel or the court that the EMC unit was damaged when it was shipped for inspection.[82]  On top of this, Plaintiffs' counsel tried to shift responsibility to Defendants and/or the court for not being specific enough about how to ship the EMC unit.[83]  The nature of attempting to introduce witness Allan Buxton without prior notice[84] is another example in a long line of conduct by Arya Plaintiffs, Manoj, and Pallavi that interfered with the judicial process.

### D. **E-mails**

There is no dispute that Plaintiff Arya locked Defendants out of their e-mail system for a few weeks in February 2016.[85]  Despite this, however, Dufossat has failed to convince the court that any e-mails were in fact permanently deleted; nor have they discussed the role that their normal information technology ("IT") provider, Rarity, has had in this process.  Similarly, with the deletion of Manoj's e-mails from his sent folder, Defendants have failed to convince the court that the e-mails have not been recovered or have been a significant hindrance to their defense and prosecution of

---

[82]    See Doc. 229, Defs.' Post-Hr'g Mem. Regarding Appropriate Sanctions for Spoliation of Evid. & Failure to Disclose Evid. p. 10.

[83]    See Doc. 223, Tr. of Hr'g Dated Apr. 29, 2019 p. 40.

[84]    See id. p. 115.

[85]    See id. p. 194.

claims.   Manoj  testified  that,  in  response  to  this  motion  for
sanctions,  he  produced  and  filed  with  the  court  "a  whole  stack  of
emails  from  [Manoj]  that  were  produced  by  Defendants'  attorney."[86]
Defendants  do  refute  this  claim.   The  dispute  of  fact  regarding  the
extent  of  missing  information  in  the  e-mail  system  will  be  left  to
the  jury.

### IV.   Proposed Conclusions of Law

The  first  <u>Moore</u>  factor  is  satisfied  as  there  have  been
multiple  instances  in  which  Plaintiffs  have  attempted  to  divert
attention  from  and  delay  providing  the  EMC  Storage  Unit  prior  to
the  unit's  destruction.   While  the  court  first  considered  some  of
these  actions  to  be  grossly  negligent,  in  light  of  this  ongoing
litigation  and  the  tactics  that  have  been  employed,  the  court  finds
the  conduct  displayed  has  been  intentionally  performed  in  bad
faith.

In  light  of  the  second  <u>Moore</u>  factor,  Plaintiffs'  counsel  is
responsible  for  not  informing  the  court  or  Defendants'  counsel  that
the  EMC  unit  was  damaged,  but  that  is  the  extent  of  counsel's
culpability  here.   Pallavi  shipped  the  unit  to  her  residence  in  New
York  and  delayed  for  three  weeks  before  sending  it  to  her  counsel.
Pallavi  is  also  the  one  responsible  for  tampering  with  witnesses
allegation  and  for  providing  inconsistent  testimony.   Likewise,
Manoj  is  solely  responsible  for  reformatting  the  computers  in  his

---

[86]     <u>See</u> <u>id.</u> p. 112.

possession and deleting e-mails.

Concerning the third Moore factor, the spoliation of evidence has severely prejudiced Defendants.  The court has found the testimony and evidence which details in part the importance of the missing data on the EMC unit to be credible.  Simply put, the data contained on the EMC unit would clearly show if data had been extracted from a device that was solely meant to be a backup unit, thus answering a majority of questions that have been presented.  Clear evidence of when and how much data was extracted by Arya Plaintiffs is crucial for Defendants' defenses and claims.  The reformatting of computers has similarly prevented the Defendants from knowing the extent to which they have claims and defenses.  Plaintiffs have repeatedly claimed to have experts that can extract the missing data, but they have not done so.

The court finally turns to the fourth Moore factor, whether a lesser sanction would achieve the necessary deterrent effect.  The court is mindful of the fact that Rule 37 death penalty sanctions are "justified only in the most egregious cases, such as . . . intentionally destroying evidence by burning, shredding or wiping out computer hard drives.'"  Quantlab Tech., Ltd., 2014 WL 651944 at *9 (quoting Nursing Home Pension Fund v. Oracle Corp., 254 F.R.D. 559, 569-70 (N.D. Cal. 2008)).  This is an egregious case.  Plaintiffs have willfully and intentionally attempted to manipulate the judicial system and the court's numerous hearings on

discovery have been met with delay tactics and deceit. A less drastic sanction would not achieve the desired deterrent effect.

## V. Claims Affected by the Imposition of Sanctions

The following claims of Arya Plaintiffs against Defendants should be struck: (1) copyright infringement; (2) contributory copyright infringement; (3) misappropriation of trade secrets through continued use of trading program; and (4) theft of trade secrets through continued use of trading program. An adverse instruction against Arya Plaintiffs is in order for the following of its claims against Duffossat Defendants: (1) misappropriation of trade secrets through hiring of Arya Quants; (2) theft of trade secrets through hiring of Arya Quants; (3) misappropriation of trade secrets through shadow trades; (4) theft of trade secrets through shadow trades. Arya Plaintiffs' remaining claims against Defendants are not subject to spoliation sanctions: (1) tortious interference with Arya Quant employment and non-disclosure agreements; (2) breach of fiduciary duty during hiring of Arya Quants; (3) quantum meruit related to services provided; and (4) unjust enrichment related to services provided. Also remaining unsanctioned are Arya Plaintiffs' claims against only Dufossat: (1) breach of contract for failing to pay for IT services; (2) breach of contract for failing to pay the trade percentage owed; and (3) promissory estoppel related to the trade percentage.

Entries of default are warranted on the following affirmative

claims of Dufossat against Manoj and Pallavi: (1) misappropriation of trade secrets related to the Trader App, (2) conversion of the Trader App; and (3) theft of laptops, files, and information. Adverse inference instructions against Manoj and Pallavi are warranted on the remainder of Dufossat's claims against them: (1) breach of fiduciary duty; (2) breaches of spousal assent and operating agreement; (3) constructive fraud; (4) aiding and abetting; (5) assisting and participating; (6) conspiracy; (7) joint enterprise; (8) spousal liability.

Entries of default are also warranted on the following affirmative claims of Dufossat against Arya Plaintiffs: (1) misappropriation of trade secrets related to the Trader App; (2) conversion of the Trader App; (3) conspiracy; and (4) declaration of ownership of the Trader App copyright.  The remaining claim of Dufossat against Arya Plaintiffs, breach of fiduciary duty, is not subject to sanctions.

Defendants and Soniat are not impeded by the spoliation of evidence in mounting their defenses of all claims asserted against them by Manoj.  Accordingly, no sanctions are warranted.

## V.  Conclusion

Based on the foregoing, the court **RECOMMENDS** that Defendants' Motion for Sanctions Related to Plaintiffs' Spoliation of Evidence and Failure to Disclose Evidence be **GRANTED** in part and **DENIED** in part.

23

It is further **ORDERED** that Defendants are awarded the entire cost of their expert and reasonable attorneys' fees expended in the investigation of the spoliation and in the preparation, filing and prosecution of their motion for sanctions including briefing and court appearances.

In light of the significant impact of the rulings and recommendations contained herein on the landscape of this lawsuit, the court **RECOMMENDS** that all other pending motions, dispositive and nondispositive, be **DENIED** at this time.[87]

If this Memorandum, Recommendation, and Order is adopted, the court will set briefing schedules for costs and fees and for motions filed pursuant to Federal Rule of Civil Procedure 56.

The Clerk shall send copies of this Memorandum and Recommendation to the respective parties who have fourteen days from the receipt thereof to file written objections thereto pursuant to Federal Rule of Civil Procedure 72(b) and General Order 2002-13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

The original of any written objections shall be filed with the United States District Clerk electronically. Copies of such objections shall be mailed to opposing parties and to the chambers

---

[87]     The other pending motions were stayed before the filing of responses in order to allow for a resolution of the motion for sanctions.

of the undersigned, 515 Rusk, Suite 7019, Houston, Texas 77002.

**SIGNED** in Houston, Texas, this 22<u>nd</u> day of August, 2019.

_____
Nancy K. Johnson
United States Magistrate Judge