# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| ARYA RISK MANAGEMENT SYSTEMS, | § | |
| PVT. LTD. and WINCAB RISK | § | |
| SOLUTION, LLC, | § | |
|       Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-cv-03595 |
| | § | |
| DUFOSSAT CAPITAL PUERTO RICO, | § | |
| LLC, DUFOSSAT CAPITAL, LP, | § | |
| DUFOSSAT CAPITAL I, LLC, | § | |
| DUFOSSAT CAPITAL GP, LLC, | § | |
| and ASHTON SONIAT, | § | |
|       Defendants | § | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| MANOJ GHAYALOD | § | |
|       Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-cv-03595 |
| | § | |
| DUFOSSAT CAPITAL PUERTO RICO, | § | |
| LLC, and ASHTON SONIAT, | § | |
| Defendants / Counter-Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| PALLAVI GHAYALOD | § | |
| | § | |
|       Counter-Defendant | § | |

# THE DUFOSSAT DEFENDANTS' RESPONSE TO PLAINTIFFS' AND COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS AND BRIEF IN SUPPORT

## TABLE OF CONTENTS

### I. PRELIMINARY STATEMENT / STATUS OF THE CASE

A.    The Sanctions Order

    1.  Dufossat Capital Claims Asserted Against Arya:

    2.  Dufossat Capital Claims Asserted Against Manoj and Pallavi:

B.  Plaintiff's Motion for Summary Judgment

### II.  RELEVANT BACKGROUND FACTS

### III. EVIDENCE OF DAMAGE PROVIDED TO PLAINTIFFS

A.  Plaintiffs' Deceit Required Defendants to Engage in Investigation

B.    Evidence of Damages Produced by the Dufossat Defendants

    1.  The PowerPoint Presentation contains evidence of Arya's earnings.

    2.    Balance Sheet Statements that value software were provided to Plaintiffs.

    3.  Manoj testifies that he is responsible for trading loss in amount of $850,000.

    4.  Arya locked Dufossat out of their e-mail system.

    5.  Dufossat was awarded ownership of the copyright for the trading software.

### IV.  LEGAL ARGUMENT & AUTHORITIES

A. Summary Judgment Standard

B.  Liability has Been Established on the Claims subject to the Summary Judgment Motion

C.  Defendant's Should Not be Penalized for Plaintiff's Egregious Conduct

D. Spoliation Presumption Precludes No Evidence Summary Judgment

E.  The Dufossat Defendants Have Produced More Than a Scintilla of Evidence.

G.  TUTSA does not Preempt the Breach of Contract / Breach of Fiduciary Duty Claims

**H. Pallavi is Liable for Breach of Fiduciary Duty and Fee Forfeiture**

 **1. Pallavi is a joint tortfeasor with her husband, Manoj.**

 **2.  Proof of actual damages are not required for fee forfeiture.**

.

**V.  CONCLUSION**

# **TABLE OF AUTHORITIES**

**CASES:**

*Federal*

*360 Mortg. Grp., LLC v. HomeBridge Fin. Servs.*, No. A-14-CA-00847-SS,
   2016 U.S. Dist. LEXIS 25652, 2016 WL 900577 (W.D. Tex. Mar. 2, 2016) ..... 21,22

*Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233 (6th Cir.1992) ................................. 15

*Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997) ......................................... 19

*Brewer v. Quaker State Oil Ref. Co., 72 F.3d 326, 334 (3d Cir.1995)* ................................ 19

*Celotex Corp. v. Catrett,* 477 U.S. 317,
   106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986) .................................................... 15

*Connors v. Graves,* 538 F.3d 373 (5th Cir.2008) .................................................................. 15

*DHI Group, Inc. v. Kent,* 397 F. Supp. 3d 904, 922 (S.D. Tex. 2019) ................................. 20

*Guzman v, Jones,* 804 F3d 707 (5th Cir. 2015) .................................................................... 19

*Hovanec v. Miller*, 331 F.R.D. 624, 633 (W.D. Tex. 2019) ................................................. 11

*In re Enron Corp. Sec., Derivative & ERISA Litig*.,
   761 F. Supp. 2d 504 (S.D. Tex. 2011) ...................................................................... 19

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.,*
   475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986))  ........................................... 15

*Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*,
   515 F.2d 1200 (5th Cir. 1975) .................................................................................. 16

*Rimkus Consulting Group, Inc. v. Cammarata*,
   688 F. Supp. 2d 598, 608 (S.D. Tex. 2010) ......................................................... 18,19

*ScaleFactor, Inc. v. Process Pro Consulting, LLC,*
   394 F. Supp. 3d 680 (W.D. Tex. 2019) .................................................................... 21

*Thomson v. Wooster*, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105  (1885) .............................. 17

*Trans World Airlines, Inc. v. Hughes,* 38 F.R.D. 499 (S.D.N.Y. 1965),
   *aff'd* 449 F.2d 51 (2nd Cir. 1972), *rev'd on other grounds* 409 U.S. 363,
   93 S. Ct. 647, 34 L. Ed. 2d 577 (1973) .................................................................... 17

*U.S. ex rel M-CO Const., Inc. v. Shipco Gen., Inc.,*
    814 F.2d 1011 (5th Cir. 1987) .................................................. 16

*United States v. Rodriguez-Sanchez*, 741 F. App'x 214, 221 (5th Cir. 2018)

*United States Sec. & Exch. Comm'n v. China Infrastructure*
    *Inv. Corp.*, 189 F. Supp. 3d 118,  (D.D.C. 2016)...................................... 17

*Univ. Computing Co. v. Lykes-Youngstown Corp.,*
    504 F.2d 518 (5th Cir. 1974) .................................................. 18

*Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497 (D. Md. 2010) ........................ 18

**State**

*Adobe Land Corp. v. Catrett*, 236 S.W.3d 351 (Tex. App.-Fort Worth 2007) .................... 19

*Burrow v. Arce*, 997 S.W.2d 229 (Tex.1999) ........................................ 24

*Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509 (Tex. 1942) ................ 23,24

**STATUTES**

TEX. CIV. PRAC. & REM. CODE § 134A.007 ............................................ 20,21

17 U.S.C. § 504(a)  .................................................................. 15

28 U.S.C.  § 2201(a)  ............................................................... 14, 15

**OTHER AUTHORITIES**

*Richard F. Dole, Jr., Preemption of Other State Law by the*
    *Uniform Trade Secrets Act*, 17 SMU Sci. & Tech. L. Rev. 95, 109 (2014)  ............ 21

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ARYA RISK MANAGEMENT SYSTEMS, | § | |
| PVT. LTD. and WINCAB RISK | § | |
| SOLUTION, LLC, | § | |
|       Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-cv-03595 |
| | § | |
| DUFOSSAT CAPITAL PUERTO RICO, | § | |
| LLC, DUFOSSAT CAPITAL, LP, | § | |
| DUFOSSAT CAPITAL I, LLC, | § | |
| DUFOSSAT CAPITAL GP, LLC, | § | |
| and ASHTON SONIAT, | § | |
|       Defendants | § | JURY TRIAL DEMANDED |

| | | |
|---|---|---|
| MANOJ GHAYALOD | § | |
|       Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:16-cv-03595 |
| | § | |
| DUFOSSAT CAPITAL PUERTO RICO, | § | |
| LLC, and ASHTON SONIAT, | § | |
| Defendants / Counter-Plaintiffs | § | |
| | § | |
| v. | § | |
| | § | |
| PALLAVI GHAYALOD | § | |
| | § | |
|       Counter-Defendant | § | |

**THE DUFOSSAT DEFENDANTS' RESPONSE TO PLAINTIFFS' AND COUNTER-
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
ON DEFENDANTS' COUNTERCLAIMS AND BRIEF IN SUPPORT**

## I. PRELIMINARY STATEMENT / STATUS OF THE CASE

Defendants Ashton Soniat, Dufossat Capital Puerto Rico, LLC ("Dufossat Capital") Dufossat Capital, LP, Dufossat Capital I, LLC, and Dufossat Capital GP, LLC (collectively the "Dufossat Defendants") file this Response to Arya Risk Management System, PVT. LTD. ("Arya"), Wincab Risk Solution, LLC ("Wincab") and Manoj Ghayalod ("Manoj") and Counter-Defendant Pallavi Ghayalod ("Pallavi") (collectively "Plaintiffs") Motion for Summary Judgment on Defendants' Counterclaims and Brief in Support [Dkt. 351] (the "Motion").  Plaintiffs have moved for summary judgment on the basis that Dufossat Defendants have not provided evidence of damages.  Plaintiffs are wrong, as will be shown in this Response.

### A.     The Sanctions Order

In the Memorandum and Recommendation issued by Magistrate Judge Johnson on August 22, 2019, Magistrate Judge Johnson stated that:

> This is an egregious case. Plaintiffs have willfully and intentionally attempted to manipulate the judicial system and the court's numerous hearings on discovery have been met with delay tactics and deceit. A less drastic sanction would not achieve the desired deterrent effect.

[Dkt. #237; p. 21-22].

In the Order Adopting Magistrate Judge's Memorandum and Recommendation, the Court noted that:

> As explained in detail at page 21 of the Memorandum and Recommendation, **Plaintiffs' spoliation of the evidence found by the magistrate judge severely prejudiced Defendants**. The court agrees that severe sanctions are warranted on the causes of action and defenses identified at pages 22-23 of the Memorandum and Recommendation. **The magistrate judge did not err in not addressing the causes of action on an element-by-element basis.** [Emphasis added].

[Dkt. #247; p. 4].

In addition to striking Arya's claims related to copyright infringement and misappropriation of trade secrets, the following claims asserted by Dufossat Capital were addressed by Magistrate Judge Johnson in her Memorandum and Recommendation and are relevant to this motion:

1. **Dufossat Capital Claims Asserted Against Arya:**

   a. Misappropriation of Trade Secrets – Trader App – **Default**
   b. Conversion of the Trader App – **Default**
   c. Conspiracy – **Default**
   d. Declaration of the Ownership of Trader App – **Default**

2. **Dufossat Capital Claims Asserted Against Manoj and Pallavi:**

   a. Misappropriation of Trade Secrets – **Default**
   b. Conversion of Trader App – **Default**
   c. Theft of Laptops, Files & Information – **Default**
   d. Breach of Fiduciary Duty – **Adverse Inference**
   e. Breach of Operating Agreement & Spousal Assent – **Adverse Inference**
   f. Constructive Fraud – **Adverse Inference**
   g. Aiding & Abetting – **Adverse Inference**
   h. Assisting & Participating – **Adverse Inference**
   i. Conspiracy – **Adverse Inference**
   j. Joint Enterprise – **Adverse Inference**
   k. Spousal Liability – **Adverse Inference**

## B. Plaintiffs' Motion for Summary Judgment

During the recent pre-trial hearing, Plaintiffs argued that they should have an opportunity to file a motion for summary judgment on the damages issue presented in their Motion in Limine. Although Plaintiffs had briefed that issue in their Motion, Plaintiffs now assert two additional grounds in their Motion.

In addition to a total lack of damage evidence, Plaintiffs are also entitled to judgment in their favor on all of Dufossat's tort claims because they are preempted by TUTSA. Finally, Pallavi is entitled to judgment in her favor on Dufossat's claims for breach of the Dufossat Operating Agreement and breach of fiduciary duty because her mere signature on a Spousal Assent does not impose on her a fiduciary duty or any of the obligations imposed on officers and managers of Dufossat under the Operating Agreement.

[Dkt. #351, pp. 1-2].

The Dufossat Defendants now respond.  To the extent the Court reaches the merits of Plaintiffs' motion and elects to entertain their request for summary disposition of the Dufossat Defendants' affirmative claims, the Dufossat Defendants ask the Court to permit them to file a parallel motion for summary judgment related to Arya's claims related to the services provided by Arya to the Dufossat Defendants. The Dufossat Defendants also ask that they be granted leave to file a motion for summary judgment related to Manoj's stipulation at the Pre-trial Hearing that he was fired for cause as that term is defined in the Operating Agreement.[1]

As a final note, Plaintiffs appear to have moved for summary judgment on all of Dufossat Capital's counterclaims, including the Declaratory Judgment action Dufossat Capital asserts. Damages are not an element of the Declaratory Judgment claim. Therefore, the declaration that Dufossat Capital is the owner of the copyright affiliated with the trading software at issue is unaffected by Plaintiffs' Motion.

## II.  RELEVANT BACKGROUND FACTS

Prior to his work for Dufossat Capital, Manoj was employed by Dufossat's predecessor companies—West Oaks Energy, L.P. ("West Oaks") and subsequently Cobalt Capital Management LLC ("Cobalt"). West Oaks and Cobalt were owned jointly by Ashton Soniat ("Soniat") and Mark Schwausch ("Schwausch").  Soniat and Schwausch ended their relationship in late 2013, and the termination was memorialized by a settlement agreement into which both entered October 30, 2013 (the "Settlement Agreement"). [Dkt. # 179-1; para. 6].  The Settlement Agreement required them to share (by assignment to one another) the company data and company

---

[1] Manoj's stipulation that he was "fired for cause" nullifies his Declaratory Judgment action and his claim for guaranteed payments purportedly arising under the Operating Agreement.

software that had been developed at great expense by West Oaks and Cobalt.  [Dkt. # 179-1; para. 7].  Pursuant to paragraph 3 of the Settlement Agreement, Manoj was charged with the task of transitioning a copy of the company data and company software to Schwauch's new company. [Dkt. # 179-1; para. 8].  As this was a highly confidential assignment, Paragraph 3, as a matter of course required Manoj to execute a confidentiality agreement and to procure the signatures of any third-party vendors he utilized, including Arya's India-based programmers, in copying the data and software to Schwausch' s new company. [Dkt. # 179-1; para. 9].

Manoj signed the confidentiality agreement, but he failed to obtain the signatures of Arya or its programmers.  [Dkt. #179-5; 80:17–82:20].  At the time Manoj signed the confidentiality agreement Soniat had generously granted him a minority interest in Dufossat Capital.  Manoj in turn had agreed to the confidentiality provisions in Dufossat Capital's Operating Agreement.  [Dkt. # 223; 92:18 – 92:25].  Manoj's dereliction of his responsibility was only the beginning of a litany of malfeasance and fraud that enabled Pallavi, his wife, to assert a patently false ownership interest in the trading software first developed by West Oaks and Cobalt and then refined by Dufossat.

Pallavi, well knowing Soniat and Schwausch were terminating their business relationship and had agreed to share the trading software (that Arya dishonestly claimed it had authored and owned), did not object to copying the software to Schwaush's new company under the terms of the Soniat/Schwaush Settlement Agreement and the division of intellectual property.  This is inconsistent with Pallavi's later ownership claim.  She did not so much as inform Soniat or Schwausch that Arya claimed an interest in the trading software at the time, which is starkly inconsistent with her position in this litigation.

West Oaks, Cobalt, and ultimately Dufossat, all used the same third-party IT provider to assemble the associated hardware and to secure the intellectual property—Rarity Solutions, LLC

**Defendants' Response to MSJ**                                                                                   **4**

("Rarity"). Rarity installed a sophisticated, password-protected network of computers, databases, and workstations (all in Houston). [Dkt. # 223; 36:1 – 37:22]. Through Rarity, Dufossat managed the virtual private network ("VPN") and the firewalls through which information was transmitted to and from India.  [Dkt. # 223; 36:1 – 37:22].

Unfortunately, the sophisticated IT system Rarity developed had a weak link—Manoj. Ignoring the multiple non-disclosure agreements and the serious duties he assumed in becoming an employee of the companies that developed the trading software and data, as well as his fiduciary duties as a member with an ownership interest in the company, Manoj conspired with and assisted his wife, Pallavi, in illegally acquiring a copy of the trading software and data essentially for themselves, and then to compete against the Dufossat Defendants

### III. EVIDENCE OF DAMAGE PROVIDED TO PLAINTIFFS

**A.  The Dufossat Defendants Did All They Could to Get to the Bottom of the Scheme.**

The technical specifics of Manoj and Pallavi's scheme have remained illusive because Manoj and Pallavi destroyed relevant technical evidence and failed to disclose other relevant evidence or otherwise frustrated the search for truth. As Magistrate Judge Johnson noted in the Memorandum and Recommendation:

> While there are different sides to every story, the court finds that Pallavi has attempted to tamper with witnesses at the very least by revoking Mr. Anand's visa and filing criminal complaints in India against potential witnesses. Furthermore, **there is reason to believe that Plaintiffs have failed to disclose information during discovery that has resulted in the Defendants' having to engage in personal investigation.** [Emphasis added].

[Dkt. #237; p. 18].

Plaintiffs continue to downplay the consequences of their "egregious" antics .  True to form, Plaintiffs continue to shift blame, just as they did during the sanctions hearing on April 29, 2019, where Magistrate Judge Johnson found:

On top of this, **Plaintiffs' counsel tried to shift responsibility to Defendants and/or the court** for not being specific enough about how to ship the EMC unit. [Emphasis added].

[Dkt. #237; p. 19].

The following statement in Plaintiffs' Motion is illustrative:

From the offset [sic] of this case **the Defendants have employed their groundless and speculative counterclaims** to muddy the this [sic] simple breach of contract case based on Defendants' failure to pay the agreed commissions on the more than $10 million in profits they made from Arya's trade recommendation. [Emphasis added].

[Dkt. #353; p. 8].

Plaintiffs' current motion is a feckless effort to distance themselves from their conduct to profit from their misconduct—misconduct Magistrate Judge Johnson, after multiple evidentiary hearings, described as a willful and intentional attempt to "manipulate the judicial system." [Dkt. 237; pp. 21-22]. She further noted that "the court's numerous hearings on discovery have been met with delay tactics and deceit." [Dkt. 237; pp. 21-22]. Plaintiffs have not changed their stripes.

Plaintiffs' deceit (which Magistrate Judge Johnson noted contributed significantly if not determinatively to the Dufossat Defendants' inability to obtain evidence) is well-documented. Throughout this litigation, including the hearing on the Motion for Sanctions on April 29, 2019, Plaintiffs, through testimony under oath primarily by Pallavi, continued incredulously to categorically deny that Arya is engaged in marketing or using the trading software, which would be evidence of damages. [Dkt. #223; 48:1 - 49:10]. Pallavi's and Manoj's testimony on this issue is and was false, and the Dufossat Defendants have produced evidence that it was false.

## B.    Evidence of Damages Produced by the Dufossat Defendants

### 1.    The PowerPoint Presentation contains evidence of Arya's earnings.

Evidence the Dufossat Defendants have obtained from third parties (produced in support of the Motion for Sanctions and in response to requests for production) reveals that Manoj and

Pallavi launched their effort to undermine the Dufossat Defendants months before Manoj's employment was terminated.  Even though Manoj was assisting Pallavi with marketing her company while he was still a 3.5% member of Dufossat Capital earning a guaranteed payment by Dufossat Capital, Pallavi continues to categorically deny that Arya is or was engaged in marketing or using the trading software. [Dkt. #223; 48:1 - 49:10].  In response to several questions about the nature of the work performed by the employees of Arya, Pallavi insisted that the purpose of employing three or four employees, at least until then and perhaps to this very day, "…[w]ell, we have to keep the application running, otherwise the application would be dead." [Dkt. #223; 48:1 -49:10].

This is ridiculous.  Pallavi's testimony related to Arya's income, marketing efforts, and use of the trading software to make trades is simply false—no one seriously could believe a company would continue to employ numerous employees just to "keep an application running" for several years without using the application to generate revenue. Contradicting Pallavi and exposing the undeniable fact she was lying on the stand, several individuals solicited by Pallavi and/or Manoj substantiated the Dufossat Defendants' suspicions about Pallavi's perjury.  Pallavi was lying when she testified that the trading software was not currently being used, that she had not attempted to market the trading software to third parties, and that Arya had not earned any revenue from trading activities.  [Dkt. #179-8; para. 4-8] [Dkt.179-9; para. 3].  The Dufossat Defendants' investigation has revealed that Manoj and Pallavi provided independent third-party witnesses with marketing materials showing Arya *had* been trading and generating significant profits, most certainly through a company affiliated with Arya, as Arya is not permitted to directly trade on the U.S. energy exchanges. [Dkt. 179-10; p. 26].  They were soliciting investments.  Their problem is they solicited investments them from Soniat's friends and associates, which has exposed them.

The declarations and marketing materials the independent witnesses provided to Soniat (attached hereto as **Exhibit A** for reference) unveil a scheme to undermine the Dufossat Defendants while Manoj was still a 3.5% minority member of Dufossat Capital and bound by a non-compete clause in the Operating Agreement that Manoj had executed and Pallavi had adopted by the Spousal Assent. The Dufossat Defendants produced this material many times throughout this litigation, direct evidence of damages sustained by the Dufossat Defendants.

This evidence of damages was provided in response to Requests for Production propounded by Pallavi. **[Exhibit B]**. Despite the Dufossat Defendants' tireless effort to discover more-detailed information about Arya's activities, they were prevented from doing so by Plaintiffs' continued deceit.  Manoj actively aided and abetted Pallavi in the deceit.  He testified at the April 29, 2019, hearing, where the Court asked Manoj "where's the money coming from?" Manoj responded as follows:

> So where is Arya coming and getting the money from? If you want me to guess, I would say it's from her – Pallavi's father has a lot of money. He is in a family with a lot of money in it. So, they are supporting her in a lot of stuff…"

[Dkt. #223: 123:8 – 123:25].

The record includes numerous examples of Plaintiffs' failure to disclose relevant information. Neither Pallavi nor Manoj refute the fact that they created the marketing materials containing trading data that was presented to prospective investors. [Dkt. #231; p. 5]. Instead, Pallavi and Arya argue that the trading data in the marketing material reflects trades "made by Dufossat." [Dkt. #231; p. 5]. The story Pallavi and Arya are peddling presents a two-fold problem for them.

First, Pallavi and Arya never disclosed this marketing material to the Dufossat Defendants. Instead, the Dufossat Defendants had to obtain it from third-party witnesses who incredibly Pallavi

claims she does not remember meeting. Second, their own explanation betrays the fact that Pallavi and Arya had the confidential information in their possession and were disclosing it to Dufossat's potential competitors. This also substantiates the Dufossat Defendants' contention that Pallavi used her access to the Dufossat e-mail account to steal information from the Dufossat Defendants, which as marketing materials cannot be trade secret, and thus this supports the Dufossat Defendants' breach of fiduciary duty and breach of contract.

Dufossat Capital is entitled to recover the profits that Arya earned as Dufossat Capital is the prevailing party on the following counterclaims asserted against Arya: (1) declaration of ownership of Trader App; (2) misappropriation of trade secrets; (3) conversion of Trader App; and (4) Conspiracy. Likewise, Dufossat Capital is entitled to recover these profits as the prevailing party in its counterclaims against Manoj and Pallavi for (1) misappropriation of trade secrets; and (2) conversion of the Trader App.  The marketing materials also provides the evidence for damages related to the breach of contract and breach of fiduciary claims that Dufossat Capital asserted against Manoj and Pallavi.

**2.      Balance Sheet Statements that value software were provided to Plaintiffs.**

In one of the numerous written discovery requests that Plaintiffs served on the Dufossat Defendants, Plaintiffs requested specific information related to documents referencing the value of the software and expressly requested the declarations and marketing materials described above. **[Exhibit C]**.  During one of numerous hearings, Plaintiffs' counsel requested an Order requiring the Dufossat Defendants to produce balance sheets that established the value of the trading software.   The e-mail exchanges contained below (and attached as **Exhibit D**) reveal that Plaintiffs' counsel was provided with the information he requested related to the value of the software:

**From:** Eric Pearson <eric@hop-law.com>
**Date:** May 22, 2018 at 11:17:19 AM CDT
**To:** Randy Foret <randyforet@icloud.com>
**Cc:** "KCurnutt@curnutthafer.com" <KCurnutt@curnutthafer.com>, Adam Alexander
<Aalexander@curnutthafer.com>
**Subject: Arya**

Please see attached requests for production.

Also, the court ordered your client to identify the bates numbers of the documents
referencing the value of the Dufossat software.  Your recent amended answers do not
provide that information.  Please provide it as soon as possible.

Thank you

Eric D. Pearson
HEYGOOD ORR & PEARSON
6363 North State Highway 161, Suite 450
Irving, Texas 75038
214-237-9001
Toll free 877-446-9001
214-237-9002 (fax)
eric@hop-law.com

---

**From:** Randy Foret <randyforet@icloud.com>
**Date:** May 22, 2018 at 1:36:49 PM CDT
**To:** Eric Pearson <eric@hop-law.com>, Kelly Curnutt <KCurnutt@curnutthafer.com>,
Adam Alexander <Aalexander@curnutthafer.com>
**Cc:** Roberto Sueiro <Rsdv@me.com>
**Subject: Production of Documents / Certificate of Conference**

Mr. Pearson, Mr. Curnutt & Mr. Alexander:

Attached is a cover letter and documents with the following bates label range: DSupp
05165 to DSupp 05214. These documents are marked as "Confidential" and represent the
balance sheets where the valuation of the trading software was obtained.

In the cover letter, I have listed the following motions that we intend on filing later this
week or early next week: (1) Motion to Compel Inspection of Storage Unit; (2) Motion to
Dismiss based on Arya / Wincab's failure to register with the Texas Secretary of State;
and, (3) Spoliation Motion based on Manoj Ghayalod's installing new operating systems
on Dufossat's laptop computers. I assume that you are opposed to the motions that affect
your client(s). Nevertheless, please confirm.

Sincerely,

**Defendants' Response to MSJ**                                                    **10**

Randall M. Foret
LAW OFFICE OF RANDALL FORET
24624 North Interstate 45, Suite 200
Spring, TX   77386
(281) 719-1485 (Office)
(972)  979-5235 (Cell)
randyforet@icloud.com

That is the end of the story.[2]  The Dufossat Defendants are due the lost profits about which Manoj and Pallavi boast in the marketing materials.  Dufossat Capital is also entitled to recover the value of the software as indicated on its balance sheets on the following counterclaims it asserted against Arya for: (1) declaration of ownership of Trader App; (2) misappropriation of trade secrets; (3) conversion of Trader App; and/or (4) Conspiracy. Likewise, Dufossat Capital is entitled to recover the value of the software (as illustrated on its balance sheet) as the prevailing party in its counterclaims against Manoj and Pallavi for (1) misappropriation of trade secrets; and (2) conversion of the Trader App.  The value of the software documented on the balance sheet also provides the evidence for damages related to the breach of contract and breach of fiduciary claims that Dufossat Capital asserted against Manoj and Pallavi.

**3. Manoj testifies that he is responsible for trading loss in amount of $850,000.00.**

---

[2] Plaintiffs' muddle the discovery rules, tossing Rule 26(a)(1)(A)(iii) in the mix.  The multi-fold concerns arising out of the abuses the Rules Committee condensed into the four items set out in Rule 26(a)(1)(A) were intended at the outset of a case to frame a discovery plan and to facilitate early settlement where possible.  They were calculated to save resources and weed out cases doomed to go nowhere as well as to address perverse incentives in the profession. Indeed, by the time the new rules including initial disclosures were proposed, instead of limiting trial by ambush and making pre-trial civil proceedings more orderly, the discovery tools put in place with good intentions decades earlier had morphed into means to foster trials within trials.  Notably, as adopted, subsection (1)(A)(iii) is followed by subsection (1)(A)(iv), which requires disclosure of insurance coverage.  So, if there is adequate insurance coverage, a framework for settlement discussions is in place – and perhaps the court can move on to other disputes where parties before it really need the court involved.  The initial disclosure requirements might shield opposing parties from tactical lawsuits and may in that vein give the actual parties as opposed to the lawyers – and the court -- something with which to assess the case early on.  They were never intended as a sword by which one side might cry "gotcha" long after the case has moved well beyond the *initial* disclosures stage.  As discussed elsewhere, Plaintiffs cannot identify any prejudice.  *See Hovanec v. Miller*, 331 F.R.D. 624, 633 (W.D. Tex. 2019) (Rule 26 is insufficient alone to warrant summary judgment on damages).

**Defendants' Response to MSJ** **11**

Manoj admitted that it was his job to monitor trading risk for the Dufossat Defendants. That included monitoring trading risk in the Follow Book.  Even though Manoj was responsible for managing risk, he allowed a trade to occur that resulted in a one-day trading loss of over $800,00.00. To be specific, Manoj testified as follows during his deposition taken on May 2, 2018:

> Q. The mistake he's talking about is an over $800000-trading-loss on January 5th, 2016, correct?
> A. Yes.

[**Exhibit E;** 265:25 – 266:2].

> Q. (BY MR. FORET) Did your -- was your job to monitor, at this point, the risk of the trading, correct? A. Yes.
> Q. Okay. And if somebody was trading beyond the risk profile you set up, you should have known about it, correct?
> A. Yes.

[**Exhibit E**; 266:8 – 266-15].

> Q. Well, wasn't it your job to determine the risk in the Follow Book?
> A. Yes.
> Q. Okay. So, again, if there was an overly risky decision made here, it would have been your job to -- to monitor that, correct?
> A. To advise Ashton, yes, whether to take it or not, yes.
> Q. Okay. And then you did not advise Ashton to take this particular trading move, correct?
> A. What do you mean?
> Q. You did not advise Ashton -- prior to this occurring, you did not advise Ashton that the risk related to this trade was too risky to take, correct?
> A. It wasn't too risky to take.

[**Exhibit E**; 267:24 – 268-13].

### 4.  Arya locked Dufossat out of its e-mail system.

In her Memorandum and Recommendation, Magistrate Judge Johnson found that "[t]here is no dispute that Plaintiff Arya locked Defendants out of their e-mail system for a few weeks in February 2016." [Dkt. 237; p. 19].  Magistrate Judge Johnson also noted that "[t]he dispute of fact regarding the extent of missing information in the e-mail system will be left to the jury." [Dkt. 237; p. 20].

**Defendants' Response to MSJ**                                                                            **12**

To stop the bleeding, the Dufossat Defendants obtained a TRO against Manoj from a Montgomery County, Texas court on February 10, 2016.  **[Exhibit F].**  In pertinent part, the TRO stated:

> a. Defendant's sequestration of Plaintiffs' email system injures Plaintiff by (i) disrupting Plaintiffs' business and preventing it from conducting its business; (ii) raising questions in the minds of Plaintiffs' employees and customers about Plaintiffs' ability to operate reliably; and (iii) **threatening to obliterate Plaintiffs' business reputation and good will**.

> c. Email and access to content by email is critical to Plaintiffs' daily functioning and business purpose. **This injury is thus irreparable because (i) it will have an impact on Plaintiffs' business, revenues, and reputation in a manner which cannot be reliably measured by any certain pecuniary standard**; (ii) it constitutes injury to Plaintiffs' business reputation and good will; and (iii) Defendant agreed in the Dufossat Capital Puerto Rico, LLC Operating Agreement that money damages would not be a sufficient remedy for any breach of that agreement, that he would not oppose granting of injunctive relief for any such breach, and that he waives any requirement for the securing or posting of any bond in connection with such remedy.

[**Exhibit F;** para. 1(a) & (c)].

On February 12, 2016, a few days after the TRO was issued, Pallavi, acting individually and on behalf of Arya, authorized her India-based attorney to send a letter to the Dufossat Defendants that stated in part that:

> It is momentous to add that, to protect its legal rights my client has stopped all its services including but not limited to access to its computer resource, **domain and email service till the dues are paid in full.** [Emphasis added].

[**Exhibit G;** para. 3]

The letter sent by Pallavi was an act of extortion. As noted in the TRO, the injury caused by hijacking the Dufossat Defendants' e-mail system was irreparable because (i) it will have an impact on Plaintiffs' business, revenues, and reputation in a manner **which cannot be reliably measured by any certain pecuniary standard;** and (ii) it constitutes injury to Plaintiffs' business reputation and good will.

Despite the knowledge that she was wreaking havoc, Pallavi did not restore access to the e-mail account to the Dufossat Defendants for several weeks.  It is not difficult to conclude Manoj joined in because the TRO was directed to him.  Yet bizarrely, he claims that he never gave it to Pallavi, though he is the one who managed the relationship with Arya.

As the Montgomery County Court noted, the damages caused by the actions of Manoj and Pallavi constituted an injury to Plaintiffs' business reputation, good will, and revenue that was difficult to ascertain.  Dufossat Capital has provided balance sheets to Plaintiffs which provide Plaintiffs with information related to Dufossat Capital's yearly revenue and profit.  From the balance sheet and related testimony, the jury can easily determine damages that would provide restitution to Dufossat Capital for the business disruption caused by Manoj and Pallavi.  Accordingly, and in conforming with Magistrate Judge Johnson's Memorandum and Recommendation, Dufossat Capital should be allowed to present testimony to the jury about the damages it sustained because of being locked out of its e-mail account by Manoj and Pallavi, as supported by the documents.

### 5.  Dufossat was awarded ownership of the copyright for the trading software.

Arya's copyright infringement claim, the claim which caused the removal of the state cases, was struck because of Arya's bad faith conduct.  Equally important, the Court declared Dufossat Capital the owner of the copyright affiliated with the trading software. Since damages are not an essential element of a declaratory judgment action, this claim is not impacted by Plaintiffs' Motion. In pertinent part, 28 U.S.C.  § 2201(a) states that:

> In a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. **Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.** [Emphasis added].

Accordingly, this Court's declaration that Dufossat Capital is the owner of the copyright affiliated with the trading software has the full force of a final judgment and cannot be impacted by Plaintiffs' Motion.  This is another attempt by Plaintiffs to assail the sound judgment of this Court.  Nevertheless, Dufossat Capital is not precluded from seeking damages for misappropriation of its trade secrets (as outlined above) or the statutory damages allowed by the Copyright Act. [3]

## IV.  LEGAL ARGUMENT & AUTHORITIES

### A. Summary Judgment Standard

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate that there is a genuine issue of material fact for trial. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Connors v. Graves,* 538 F.3d 373, 376 (5th Cir.2008); *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

Plaintiffs filed a Motion on all of Defendant Dufossat's counterclaims, including those already granted by the Court, on the grounds that Dufossat has not presented evidence of damages.

---

[3] Pursuant to 17 U.S.C. § 504(a), an infringer is liable for either: (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c).

[Dkt. #351; p. 6].   As mentioned above, this Court sanctioned Plaintiffs for the willful and intentional spoliation of evidence in this case, which the Court found severely prejudiced Defendants claims and defenses.  Yet, in what is a pious mocking of the judicial system, Plaintiffs brazenly claim an entitlement to judgment on the merits despite this Court's sanctions, claiming Defendants have not shown sufficient evidence of damages.

As will be shown below, Plaintiffs' Motion should be denied on grounds that: (1) The default judgment against Plaintiffs establishes liability on the specific claims in which the default judgment was rendered, precluding a summary judgment on already determined issues; (2) Defendants should not be penalized for Plaintiffs' egregious conduct spoliating evidence and severely prejudicing Defendants' claims and defenses, including damages; (3) Contrary to Plaintiffs' contention, Defendants have shown and produced evidence of damages—certainly more than is sufficient to overcome a motion for summary judgment in the present case; (4) Declaratory judgment that was granted to the Dufossat Defendants is final; (5) Plaintiffs were not allowed to raise the TUTSA issues under the ruling of the Court; and (6) Plaintiffs were not allowed to raise the spousal liability issue under the ruling of the Court.

## B.  Liability Has Been Established on the Claims Identified in the Summary Judgment Motion.

A default judgment is a judgment on the merits that conclusively establishes liability, in this case, against Plaintiffs.  *U.S. ex rel M-CO Const., Inc. v. Shipco Gen., Inc.,* 814 F.2d 1011, 1014 (5th Cir. 1987). Plaintiffs' Motion constitutes an improper attempt to escape the effects of the default judgment and litigate what has already been considered admitted in law—it is an impermissible collateral attack. *See Nishimatsu Const. Co., Ltd. v. Houston Nat. Bank*, 515 F.2d 1200 (5th Cir. 1975) ("Attempts by a defendant to escape the effects of his default should be strictly circumscribed; he should not be given the opportunity to litigate what has already been considered

admitted in law."), *citing* Trans *World Airlines, Inc. v. Hughes*, 38 F.R.D. 499, 502 (S.D.N.Y. 1965), *aff'd* 449 F.2d 51 (2nd Cir. 1972), *rev'd on other grounds* 409 U.S. 363, 93 S. Ct. 647, 34 L. Ed. 2d 577 (1973). When claims, as in the present case, are supported by well-pleaded allegations, a default judgment on those claims is unassailable on the merits. *Id.* at 1206, *citing Thomson v. Wooster*, 114 U.S. 104, 5 S.Ct. 788, 29 L.Ed. 105 (1885).

The default judgment in this case has established liability against the Plaintiffs on the specific claims set forth in the Magistrate Judge's Memorandum and Recommendation, adopted by the Court. The only thing remaining on these claims is a determination of damages. *See United States Sec. & Exch. Comm'n v. China Infrastructure Inv. Corp.*, 189 F. Supp. 3d 118, 128 (D.D.C. 2016)) (In affirming the entry of default judgment as sanctions under FRCP 37(b), the court stated "the defaulting defendant concedes all well-pleaded factual allegations as to liability, though the court may require additional evidence concerning damages."); *see also Shipco Gen., Inc.,* 814 F.2d at 1014 (although a default judgment is a judgment on the merits that conclusively establishes the defendant's liability, it does not establish the amount of damages).

Accordingly, Plaintiffs' Motion on claims in which liability has already been established must be denied. The only remaining issue on these claims is an independent determination of damages. As has been previously noted, the Court should give the Dufossat Defendants leeway in proving this because of the Plaintiffs' egregious conduct in spoliating evidence that severely prejudiced Defendants' claims and ability to ascertain damages, and the fact that Defendants have produced evidence of damages.

Specifically, Manoj and Pallavi provided marketing materials to two potential business partners that contained representations about the profits being generated by Plaintiffs' trading business. The Court should allow the jury to consider the information contained in the marketing

materials as accurate and allow the jury to utilize this information in formulating a damages award for the Dufossat Defendants.

## C.  Defendants' Should Not Bear the Brunt of Plaintiffs' Egregious Conduct.

The Fifth Circuit has recognized that where the damages are uncertain, that uncertainty should not preclude recovery.  *Univ. Computing Co. v. Lykes-Youngstown Corp.,* 504 F.2d 518, 538–39 (5th Cir. 1974).  Every misappropriation case is controlled by its own peculiar facts and circumstances and requires a flexible and imaginative approach to the problem of damages. *Id.*

In this case the Court made a finding of spoliation based on the Plaintiffs' "egregious" conduct.  By its very definition, spoliation of evidence causes prejudice when, because of the spoliation, the party claiming spoliation cannot present "evidence essential to its underlying claim." *Victor Stanley, Inc. v. Creative Pipe, Inc.,* 269 F.R.D. 497, 532 (D. Md. 2010)

The very purpose of the sanctions imposed is to "(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Creative Pipe, Inc.,* 269 F.R.D. at 533–34.  These purposes would be thwarted if Plaintiffs are allowed to benefit from their egregious bad faith conduct by spoliating evidence that Defendants need to prove their damages.

*Rimkus Consulting Group, Inc. v. Cammarata,* 688 F. Supp. 2d 598, 608 (S.D. Tex. 2010), is a case similar to the instant case that also involved willful misconduct.  Specifically, *Rimkus* included allegations of the intentional destruction of emails and other electronic information at a time when they were known to be relevant to anticipated or pending litigation.  *Id*. at 607.  The court in *Rimkus* held that it was appropriate to consider spoliation when considering the summary judgment motion, and the Court ultimately denied the spoliator's motion in part because of the spoliation and withholding of evidence relevant to that case. *Id*. at 608.

**Defendants' Response to MSJ**                                                                                                    **18**

**D. Adverse Inference Precludes Summary Judgment.**

When confronted with a claim of bad faith spoliation, a court may give an adverse-inference instruction, as the Court has issued here against Plaintiffs. *See United States v. Rodriguez-Sanchez*, 741 F. App'x 214, 221 (5th Cir. 2018) **[Exhibit H]** (*citing Rimkus Consulting Grp., Inc.* 688 F. Supp. 2d at 611-20 (providing a detailed analysis of spoliation sanctions)). "Bad faith, in the context of spoliation, generally means destruction *for the purpose* of hiding adverse evidence." *United States v. Rodriguez-Sanchez*, 741 F. App'x 214 at 222. (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (emphasis added by court)).

An adverse inference informs the trier of fact that it may "receive the fact of the document's nonproduction or destruction as evidence that the party that has prevented production did so out of the well-founded fear that the contents would harm him." *Brewer v. Quaker State Oil Ref. Co.,* 72 F.3d 326, 334 (3d Cir.1995). Bad-faith spoliation of evidence relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction. *See Aramburu v. Boeing Co.*, 112 F.3d 1398, 1407 (10th Cir. 1997); *see also Adobe Land Corp. v. Catrett*, 236 S.W.3d 351 (Tex. App. Fort Worth 2007).[4]

In *Adobe*, the defendant filed a no evidence summary judgment on damages in a case where the plaintiff sought a spoliation presumption based on destruction of evidence. The plaintiff did not have access to any other evidence which would provide them with the same information they sought to obtain with the destroyed evidence. *Id.* at 356. Therefore, the defendant's spoliation severely hindered the plaintiff's ability to present its case and the trial court abused its discretion

---

[4] *See In re Enron Corp. Sec., Derivative & ERISA Litig*., 761 F. Supp. 2d 504 (S.D. Tex. 2011) (applying *Adobe Land Corp. v. Griffin* spoliation assumption in holding court may supplement analysis by applying state law elements on state claims).

**Defendants' Response to MSJ**                                                                                          **19**

in not granting the plaintiff a spoliation presumption as a means of precluding a no-evidence summary judgment. *Id.*

The Magistrate Judge's adverse inference recommendation, adopted by this Court, creates the presumption or inference that Plaintiffs' spoliated evidence, including evidence of Defendants' damages, was unfavorable to Plaintiffs.  This adverse inference precludes Plaintiffs' requested summary judgment.

**E.  The Dufossat Defendants Have Produced More Than Sufficient Evidence**.

As is illustrated more fully above, the Dufossat Defendants have produced more than sufficient evidence. That evidence includes:

(a) a marketing brochure prepared by Plaintiffs that contains evidence trading profits;

(b) combined balance sheets from Dufossat Capital that contains the value of the software;

(c)  Manoj's testimony that he was responsible for a trading loss exceeding $800,000; and,

(d)  a TRO finding that Manoj (assisted by Pallavi) caused irreparable harm to Dufossat Capital's good will, reputation and earnings.

**G.      TUTSA does not Preempt the Breach of Contract / Breach of Fiduciary Duty Claims.**

Plaintiffs argue that the Texas Uniform Trade Secrets Act ("TUTSA") contains an express preemption provision, which states that it "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007. As was previously noted, Plaintiffs did not request of the Court an opportunity to brief the issue of preemption under TUTSA.

Notwithstanding Plaintiffs' lack of authority, TUTSA has no effect on "other civil remedies that are not based upon misappropriation of a trade secret ....*" DHI Group, Inc. v. Kent*, 397 F. Supp. 3d 904, 922 (S.D. Tex. 2019) (Opinion by U.S. Magistrate Judge Nancy K. Johnson), *citing*

Tex. Civ. Prac. & Rem. Code § 134A.007(b)(2); *see ScaleFactor, Inc. v. Process Pro Consulting, LLC,* 394 F. Supp. 3d 680 (W.D. Tex. 2019) ("Excepted from [TUTSA's] preemption provision are 'contractual remedies' and 'other civil remedies that are not based on misappropriate of a trade secret'"); *see also,* Richard F. Dole, Jr., *Preemption of Other State Law by the Uniform Trade Secrets Act,* 17 SMU Sci. & Tech. L. Rev. 95, 109 (2014) ("The majority approach preempts noncontractual legal claims protecting business information, whether or not the business information is a Uniform Act trade secret.") **[Exhibit I]**.

In *360 Mortgage Group*, the court found that claims for conversion, unjust enrichment, and a constructive trust were preempted by TUTSA on the ground that they were based on the same underlying harm—taking confidential information. *360 Mortg. Grp., LLC v. HomeBridge Fin. Servs.*, No. A-14-CA-00847-SS, 2016 U.S. Dist. LEXIS 25652, 2016 WL 900577 at *7-8 (W.D. Tex. Mar. 2, 2016) **[Exhibit J]**. Importantly, however, the *360 Mortgage* court found that a breach of fiduciary duty claim was **not** preempted by TUTSA because there were "facts unrelated to Plaintiffs' misappropriation claim which could support Plaintiffs' breach of fiduciary claim." *Id.,* at *7. The court pointed to other evidence unrelated to the taking of confidential information to support a claim for breach of fiduciary duty, including continuing to work for an employer for a month after violating an agreement, deletion of potentially incriminating e-mails, and submission of a false declaration to the court stating that the employee delivered a formal resignation letter. *Id.* The court concluded that "[b]ecause the claim is based on facts unrelated to those which form the basis of the trade secret misappropriation claims, Plaintiffs' breach of fiduciary duty claim in not preempted." *Id.*

Similar to the plaintiff in *360 Mortgage*, Dufossat Capital has asserted and established its contractual remedies in addition to other civil remedies (including breach of fiduciary duty claims)

that are not based on misappropriation of a trade secret.  Therefore, these claims are not subject to the TUTSA preemption.  Magistrate Judge Johnson stated that "[t]here is no dispute that Plaintiff Arya locked Defendants out of their e-mail system for a few weeks in February 2016.' [Dkt. #237; p. 19]. Likewise, Magistrate Judge Johnson noted that the "extent of missing information in the e-mail system will be left to the jury." [Dkt. #237; P. 20]. In addition, there is no dispute that Plaintiffs continued to work for Defendants after violating their respective agreements and assisting one another in doing so, and that Manoj and Pallavi have submitted false statements to the Court.

As the Montgomery County Court noted in the TRO, the injury caused by the hijacking of the Dufossat Defendants' e-mail system was irreparable because (i) it will have an impact on Plaintiffs' business, revenues, and reputation in a manner **which cannot be reliably measured by any certain pecuniary standard;** and (ii) it constitutes injury to Plaintiffs' business reputation and good will.  Both Pallavi and Manoj were active participants in the hijacking of the Dufossat Defendants' e-mail system.

Equally important, the Dufossat Defendants have provided competent evidence (through the declarations of Greg Forero and Harry Sargeant) that established that Manoj breached his contractual duties arising under the Operating Agreement, as well as the fiduciary duty he owed to Dufossat Capital, by seeking to compete against Dufossat Capital while he was still a 3.5% member of the company and while he was still receiving guaranteed payments from Dufossat Capital. *See, e.g., 360 Mortgage Grp*., at *7-8. Manoj's competitive activities included assisting his wife, Pallavi, to raise money for a business that was competing directly against Dufossat Capital. In fact, in his deposition, Manoj confirmed his meeting with Mr. Forero when he testified that:

**Defendants' Response to MSJ**                                                          22

Q. Did you tell Mr. Forero that you had ended your relationship with Ashton?
A. Yes.
Q. And this was in November of 2015, correct?
A. Yes.

[**Exhibit E**; 314:5 – 314:9].

## H. Pallavi Is Liable for Breach of Fiduciary Duty and Fee Forfeiture.

### 1. Pallavi is a joint tortfeasor with her husband, Manoj.

This is another issue that Plaintiffs did not seek leave to brief.  In its Motion, Plaintiffs state that "Dufossat's claim against Pallavi for breach of fiduciary duty is similarly based in part on the Spousal Assent to the Dufossat Operating Agreement." [Dkt. 351; p. 25]. While it is true Pallavi signed a Spousal Assent, Pallavi's fiduciary duty also arises independently of the Spousal Assent and by virtue of her business relationship with the Dufossat Defendants where she was provided with confidential information and provided with access to the Dufossat Defendants' e-mail account. Pallavi breached the fiduciary duties that she owed to the Dufossat Defendants by, among other things, locking the Dufossat Defendants out of their e-mails system. [Dkt. #237; p. 19].

In *Kinzbach Tool Co. v. Corbett-Wallace Corp.,* 160 S.W.2d 509, 512-513 (Tex. 1942), the court found that the term "fiduciary" was derived from civil law and that it generally applied to "[a]ny person who occupies a position of peculiar confidence towards another."  "It refers to integrity and fidelity." *Id*. "It contemplates fair dealing and good faith, rather than legal obligation, as the basis of the transaction." *Id*.  **The term includes those informal relations which exist whenever one party trusts and relies upon another, as well as technical fiduciary relations.**" *Id.* [Emphasis added].

Pallavi not only had an independent fiduciary duty derived from the relationship of trust that Pallavi occupied when she was provided with confidential information and allowed to assume managerial control over Dufossat's e-mail account, she is also a joint tortfeasor with her husband

who also owed his own fiduciary duty to the Dufossat Defendants.  "It is settled as the law of this State that where a third party knowingly participates in the breach of duty of a fiduciary, such third party becomes a joint tortfeasor with the fiduciary and is liable as such." *Kinzbach Tool Co.,* 160 S.W.2d at 514.

The facts in *Kinzbach* bear a striking resemblance to the facts in the instant case. In short, Turner, Kinzbach's trusted employee, permitted his employer to consummate a contract whereby it bought for $25,000 that which he, Turner, knew might be bought for $20,000. *Id*. at 513. In return, Turner received a commission from Corbett, the seller of the equipment, that he failed to disclose to his employer. *Id.* Similar to the disloyal employee in *Kinzbach,* Manoj assisted Pallavi with: (1) hijacking Dufossat Capital's e-mail account and deleting or stealing confidential data; (2) competing against Dufossat Capital; (3) misappropriating Dufossat Capital's confidential information not covered by TUTSA; and (4) removing computers and other equipment from Dufossat's offices. As a result of her actions, Pallavi is liable as a joint tortfeasor.

### 2.  Proof of actual damages are not required for fee forfeiture.

.       In holding fee forfeiture to be appropriate, the *Kinzbach* court held that: "[i]t would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired. *Id.* at 514. Decades after *Kinzbach* was decided, the Texas Supreme Court again reiterated, "To limit forfeiture of compensation to instances in which the principal sustains actual damages would conflict with both justifications for the rule." *Burrow v. Arce*, 997 S.W.2d 229, 238  (1999).

Justifying the forfeiture policy originally set forth in *Kinzbach*, the *Burrow* court wrote:

It is the agent's disloyalty, not any resulting harm, that violates the fiduciary relationship and thus impairs the basis for compensation.  Removing the disincentive of forfeiture

**Defendants' Response to MSJ**                                                                                         **24**

except when harm results would prompt an agent to attempt to calculate whether particular conduct, though disloyal to the principal, might nevertheless be harmless to the principal and profitable to the agent.

*Id.* at 238.

The Dufossat Defendants have met their burden of providing sufficient evidence of damages despite Plaintiffs' continued attempts to obstruct justice and withhold evidence. The evidence introduced in this case by the Dufossat Defendants establishes that Manoj breached the terms of the Operating Agreement and the fiduciary duty he owed to the Dufossat Defendants almost immediately after he obtained an ownership interest in Dufossat Capital. Manoj's breaches included, among other things: (1) failing to obtain Pallavi and her employee's signatures on an NDA which allowed Arya to claim an ownership interest in the trading software; (2) assisting Pallavi in competing against the Dufossat Defendant's while he was still receiving a guaranteed payment and while he was a 3.5% member of Dufossat Capital; (3) removing computers from Dufossat's office (with assistance from Pallavi) and deleting the files on the computers; and, (4) assisting Pallavi in hijacking Dufossat's e-mail account and disobeying a court order that require him to return administrative rights to Soniat and the Dufossat Defendants.

The actions of Pallavi and Manoj caused incalculable damage to the Dufossat Defendants and was calculated to destroy the Dufossat Defendants business.  Because Plaintiffs have made it difficult, if not impossible, to obtain evidence of damages, the appropriate remedy is disgorgement of all benefits and payments that Plaintiffs received from the Dufossat Defendants.

## V.  CONCLUSION

For the foregoing reasons, the Dufossat Defendants request that the Court deny Plaintiffs' Motion and grant them such further relief to which they may be entitled.

GREGOR WYNNE ARNEY, PLLC

By: /s/ Michael Wynne
    Michael Wynne
    Texas Bar No. 00785289
    SDTX I.D. NO. 18569
    mwynne@gcfirm.com
    909 Fannin, Ste. 3800
    Houston, TX  77010
    Telephone:  281-450-7403

    And

HUGHES ARRELL KINCHEN, LLP

    John Kinchen
    Texas Bar No. 00791027
    SDTX I.D. No. 18184
    jkinchen@hakllp.com
    Robert Lemus
    Texas Bar No. 24052225
    SDTX I.D. No. 1145787
    rlemus@hakllp.com
    1221 McKinney, Suite 3150
    Houston, Texas 77010
    Telephone: 713-942-2255
    Facsimile: 713-942-2266

**ATTORNEYS FOR SONIAT AND DUFOSSAT
DEFENDANTS/COUNTER-PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been sent to all parties shown below, via the court's electronic notification system on August 18, 2021:

Eric D. Pearson
Heygood, Orr & Pearson
6363 N. State Highway 161, Suite 450
Irving, Texas 75038
eric@hop-law.com
**Attorney for Arya, Wincab and Pallavi Ghayalod**

Kelly J. Curnutt
CURNUTT & HAFER, LLP
101 East Park Row
Arlington, Texas   76010
KCurnutt@CurnuttHafer.com
**Attorney for Manoj Ghayalod**

*/s/ Michael Wynne*
 Michael Wynne